## CONSOLIDATED LEAD & ZINC CO. v. STATE INDUSTRIAL COM. et al.

No. 21674.    Opinion Filed Jan. 6, 1931.

L. A. Wetzel, for petitioner.

J. Berry King, Atty. Gen., and Robert D. Crowe, Asst. Atty. Gen., for respondents.

CULLISON, J. This is an original proceeding in this court commenced by the petitioner, Consolidated Lead & Zinc Company, to review an award made by the State Industrial Commission in favor of the respondent, William Hatfield, for an accidental injury received by respondent to his knee on August 29, 1929.

The facts out of which this controversy arises are as follows:

Petitioner is a corporation engaged in the business of mining lead and zinc ores in Ottawa county, Okla., and at the time of the alleged accident was subject to the Workmen's Compensation Law of Oklahoma, carrying its own risk as provided by law. The respondent had worked for a considerable time for petitioner in said mines as a common laborer. On August 29, 1929, while engaged in work with a pump gang in the mines, respondent was riding on top of a truck and was sitting with his right leg under him, for the purpose of balancing a load of pipe on said truck, and while riding thereon the back end of the truck tipped up, causing the truck to stop suddenly. When the respondent started to arise from his sitting position he felt a severe pain in his left knee, and it began to swell and pain him. Respondent, however, continued to work for some five or six days, at which

time the pain in his knee became worse. He then reported to the superintendent of petitioner's mine, who sent respondent to the company doctor, who diagnosed the injury as a twisted or sprained knee and applied medical treatment for the cure of the same.

It appears from the record, compensation was paid respondent by petitioner from September 10, 1928, to March 31, 1930, less a few weeks respondent was working and receiving full wages; said compensation amounting to the sum of $1,315.56. During this period of time respondent was furnished with a mechanical brace by petitioner, which he wore for several months upon the advice of physicians, but which resulted in no benefit to his knee. The petitioner then tendered an operation at the expense of petitioner company for the purpose of effecting the cure of respondent's knee. Respondent refused to submit to such operation, and thereupon petitioner stopped the payment of compensation to claimant.

The claimant thereupon filed claim with the State Industrial Commission, and a hearing was had July 22, 1930, to determine the extent of disability. Pursuant to such hearing the Industrial Commission found that claimant on August 28, 1928, suffered an injury arising out of and in the course of his employment with petitioner, compensable under the Workmen's Compensation Act; that the claimant had been paid compensation for temporary total disability from the date of the accident to March 31, 1930, less the periods that he received full wages and was working for petitioner, and that the average wage of claimant was $4.50 per day at the time of the accident.

Based upon such finding the Commission made the following order:

"On consideration of the foregoing facts that said claimant is entitled to compensation for a period of 87 and ½ weeks at the rate of $17.31 per week, for 50 per cent. loss of the use of said claimant's right leg. It is therefore ordered: That respondent pay to the claimant the sum of $326.01 as compensation computed from March 31, 1930, up to and including the 9th of August, 1930, and continue the payment of compensation at the rate of $17.31 per week until the full 87½ weeks is paid. * * *"

From said order and award petitioner appeals to this court assigning as error:

### First:

"The Commission erred in finding 50 per cent. loss of use of claimant's right leg and awarding him compensation for 87 and ½ weeks."

In support of the first contention, petitioner in its brief says:

"There is absolutely no evidence in this record which in any manner reasonably tends to substantiate a finding by the Commission that claimant has suffered 50 per cent. total loss of the use of his leg. * * *"

The only medical testimony offered at the hearing in this case was that of Dr. M. M. DeArman, attending physician of claimant, and who, after being duly qualified, testified:

"Q. Have you an opinion as to whether or not he (claimant) had any permanent loss of use at this time? A. He has a loss of use during that portion of time the knee locks on him. Q. You see him walk around here today? A. Yes, sir. Q. You notice the limp? A. Yes, sir. Q. From that examination and based on your findings and opinions and knowledge, did you have any opinion of the conditions with what you could see as to the permanent loss of the use he sustained at this time in the absence of the operation? A. Judging from his attitude in walking, I think at this time he has an inability to extend his leg completely; whether that is due to the pain or entirely to the slipping, I do not know. * * * I wouldn't know how to fix the disability in per cent., that is governed by pain. * * * I haven't made any estimate as to what your disability was. I said that it was due to your pain entirely."

Dr. DeArman further testified that the claimant might proceed for several months without any disability, and then, if the knee "locked" on him, he would be unable to use it for perhaps several months.

The claimant testified that the pain suffered by him and the consequent disability to the use of his leg depends upon the use to which it is put. At times, in the course of claimant's work when it is necessary to walk on his leg for any extended period of time, claimant testified the knee would swell; that he would suffer pain and would be forced to quit work and treat the knee until it became normal once more; whereas, if the nature of claimant's work only required a limited use of his right leg, then he would have complete use of the same.

This court has held that "when, in an action for personal injury, the injury complained of is of such a character as to require skilled and professional men to determine the cause and extent thereof, the question is one of science and must necessarily be proved by the testimony of skilled professional persons." St. Louis Mining & Smelting Co. et al. v. State Ind. Com. et al., 113 Okla. 179, 241 Pac. 170.

The rule therein announced, however, has no application to the case here under consideration. The attending physician in the case at bar specifically stated that he was unable to fix the disability to claimant's leg in per cent., because that fact could be determined solely from the pain suffered by claimant in the use of his leg, which fact was not within the physician's knowledge.

It is self-evident that this fact (pain) cannot be established by medical testimony, but, rather, is a fact which lies almost solely within the knowledge of the claimant himself, and upon this question the testimony of the claimant is the only competent evidence before the court on that question.

As previously stated, the claimant's testimony shows that the disability suffered depends upon the use to which the leg is put, which varies according to the nature of the work the claimant is required to do.

Under the record herein, we are of the opinion, and hold, that the testimony of claimant, together with the other evidence and circumstances in the case, sustains the finding and order by the Commission awarding claimant compensation for 50 per cent. loss of the use of his right leg.

### Second:

The second contention presented by petitioner is:

"The Commission erred in finding that any disability of claimant at the time of the award arose out of his employment with the respondent."

In support of this proposition the petitioner in its brief advances the following argument:

"All the medical testimony in this case is to the effect that there are two methods of treating a condition such as claimant is suffering from, one the wearing of a mechanical brace, the other an operation. Respondents furnished a mechanical brace to claimant which he wore for a period of 9 months, during which time he was paid compensation. It appears, however, that for some reason, either that it did not fit properly or the claimant did not properly cooperate with the doctors in wearing it, it did not give the desired relief. Thereupon, respondents tendered the claimant the only other treatment for his condition and that was refused by him. We contend that such refusal was unreasonable and that his disability is not now due to the alleged injury, but is due to such unreasonable refusal of claimant to undergo a safe and simple surgical operation which is fairly certain to result in the removal of the disability and is not attended with serious risk or pain and is such that an ordinarily prudent and courageous person would submit to for his own benefit and comfort, no question of compensation being involved."

Cited in support of this contention is the case of Moran v. Oklahoma Engineering & Machine Boiler Co., 89 Okla. 185, 214 Pac. 913, wherein the court held:

"Where the workman unreasonably refuses to undergo a minor operation, simple, safe, and reasonably certain to effect a cure, the continuing disability results not from the injury, but from his own willful act."

That is, no doubt, the true rule in those cases wherein the disability sought to be cured necessitates only a minor operation, simple, safe, and reasonably certain to effect a cure.

Equally true is the rule announced in Henly v. Oklahoma Union Railway Co., 81 Okla. 224, 197 Pac. 488, holding that the Industrial Commission has no authority to compel an employee to submit to a major operation where there is a risk of life involved in the "slightest degree." In the body of the opinion, the court said:

"The rule appears to be supported by the overwhelming weight of authority that no man shall be compelled to take a risk of death, however slight, in order that the pecuniary obligation created by law in his favor against his employer may be minimized." Citing: Tutton v. Steamship Majestic, L. J. 1909 Reports (N. S.) Vol. 78 K. B. p. 530; Blate v. Third Ave. R. Co., 44 App. Div. 163, 60 N. Y. Supp. 732; McNally v. Hudson & M. R. Co., 87 N. J. Law, 455; Donovan et al. v. New Orleans Ry. & Light Co. (La.) 61 So. 216; See note 48 L. R. A. (N. S.) 110; McNamara v. Metro. Street Ry. Co. (Mo.) 114 S. W. 50; Guild v. Portland Ry., Light & Power Co. (Ore.) 131 Pac. 310; Jendrus v. Detroit Steel Products Co. et al. (Mich.) 144 N. W. 563.

The reason for the rule is well stated by the Missouri court in McNamara v. Metropolitan Street Ry. Co., supra, quoted with approval by this court in Henly v. Oklahoma Union R. Co. et al., supra, wherein the Supreme Court of Missouri said:

"We do not think plaintiff should be criticized and punished on account of his failure to undergo a surgical operation. He should be accorded the right to choose between suffering from the disease all his life or taking the risk of an unsuccessful outcome, of a serious surgical operation. Certainly, defendant, whose negligence produced the unfortunate condition, is in no position to compel plaintiff again to risk his life in order that the damages may be lessened. To give heed to such contention would be

to carry to an absurd extreme the rule which requires a person damaged by the wrong of another to do all that reasonably may be done to minimize his damages."

The petitioner in its brief, however, contends that an operation such as is necessary in the case at bar is not regarded as dangerous or serious, but is a comparatively slight inconvenience and will result in a permanent cure.

While Dr. DeArman, the only physician or surgeon to take the witness stand in this case, testified that it was highly probable that an operation on claimant's knee would eventually give claimant a 100 per cent. function of the use of said knee, yet the doctor would not go so far as to state that claimant would get a 100 per cent. result, or 100 per cent. function of the knee without complications resulting from the operation.

Can it be said that the claimant herein has unreasonably refused to undergo a minor operation, simple, safe, and reasonably certain to effect a cure?

In Strong v. Sonken-Balamba Iron & Metal Co. (Kan.) 198 Pac. 182, the court there held:

"The unreasonableness of the refusal of an injured employee, who is seeking to recover compensation under the Workmen's Compensation Act, to permit an operation to be performed, is a question of fact to be determined from the evidence."

And as is said in Moran v. Oklahoma Engineering & Machine & Boiler Co., 89 Okla. 185, 214 Pac. 913.

"The burden of proof was upon the employer to establish all facts which would be necessary. * * * Whether or not the refusal of an employee to submit to operation and treatment is unreasonable is a fact which the employer must establish, and the Commission find, in order to stop his allowance, and they must find further that the treatment would have relieved the trouble, and thus benefited the employer."

Under the state of the record herein, we are of the opinion the petitioner (employer) has failed to sustain the burden of proving that an operation on the claimant's leg would be simple, safe, and reasonably certain to effect a cure, and that the claimant in undergoing such operation would not be subjected to even a slight risk of death as a result thereof.

This court will not speculate as to what might be the outcome of such an operation; and under the evidence herein we are unwilling to hold that the same would be "simple, safe, and reasonably certain to effect a cure."

The order and award of the State Industrial Commission of August 9, 1930, is hereby affirmed.

LESTER, V. C. J., and HUNT, RILEY, HEFNER, SWINDALL, and ANDREWS, JJ., concur.

MASON, C. J., and CLARK, J., absent.

Note.—See under (1) anno. L. R. A. 1916A, 266; 28 R. C. L. p. 829; R. C. L. Continuing Perm. Supp. p. 1211. (2, 3) anno. L. R. A. 1916A, 139, 259; L. R. A. 1917D, 174; 6 A. L. R. 1260; 18 A. L. R. 431; 28 R. C. L. p. 815; R. C. L. Perm. Supp. p. 6240.