SELINA ROBINSON, PROSECUTOR, v. GERALD B. JACKSON, RESPONDENT.

Submitted February 14, 1936—Decided May 14, 1936.

For the prosecutor, *Nathan Rabinowitz* and *Milton C. Kitay* (*Isadore Rabinowitz,* of counsel).

For the respondent, *Herbert C. Dolan.*

The opinion of the court was delivered by

HEHER, J. The question presented for decision is the meaning of paragraph 20 (e) of the Workmen's Compensation act of 1911 (*Pamph. L., p.* 134), incorporated therein by chapter 93 of the laws of 1919 (*Pamph. L., pp.* 201, 209), in terms following:

"Whenever it shall appear that an employer is being prejudiced by virtue of the refusal of an injured employe to accept proffered medical and surgical treatment deemed necessary by the physician selected by the employer, or his failure or neglect to comply with the instructions of the physician in charge of the case, such employer is hereby authorized to file a petition with the workmen's compensation bureau, which is hereby empowered to order proper medical and surgical treatment at the expense of the employer, and in event of refusal or neglect by the employe to comply with this order the bureau shall make such modification in the award contained in the schedule as the evidence produced shall justify."

The injury was sustained on August 25th, 1933; and the petition for compensation was filed with the bureau on April 2d, 1934. The employer, while conceding that prosecutor suffered a permanent disability of the left foot to the extent of sixty-six and two-thirds per cent. of normal function and use, nevertheless insists that proffered medical and surgical aid, refused by prosecutor, would in all human likelihood have effected a "cure," or materially reduced the disability,

and that, in these circumstances, the Bergen County Court of Common Pleas correctly found a compensable disability to the extent only of twenty-five per cent. loss of use of the injured foot. The rejected offer of medical aid was made on September 27th, 1933, but the bureau concluded that inasmuch as the employer did not, by appropriate petition, invoke the provisions of the statute under review, he was precluded from showing in defense that any part of the disability under which prosecutor labors is traceable to her unreasonable rejection of the proposed medical and surgical aid. The Pleas, on the other hand, ruled that the statute in question is "permissive and not mandatory," and that the employer's failure "to comply strictly with the provisions of the act does not preclude him from proving her refusal to accept the medical treatment in diminution of the award." The Supreme Court, on *certiorari*, affirmed the judgment of that tribunal.

We hold to the view that the latter interpretation of the statute does not effectuate the legislative purpose. The right of the employer to impose medical or surgical treatment upon the injured employe is not, of course, an absolute one. Compulsion in such matters must needs be cautiously exercised. The employer's right in this regard is necessarily circumscribed by the corelative right of the employe to avoid, if he chooses, peril to life, however slight, and undue risks to health, and anguish that goes beyond the bounds of reason. The employe's refusal to submit to the tendered treatment, whether medical or operative, is not unreasonable, and therefore unjustifiable in the legal sense, unless it is free from danger to life and health, and extraordinary suffering, and, according to the best medical or surgical opinion, offers a reasonable prospect of restoration or relief from the disability. And the reasonableness of the refusal, tested by this standard, is one of fact. *McNally* v. *Hudson and Manhattan Railroad Co.,* 87 *N. J. L.* 455; *affirmed,* 88 *Id.* 729.

Viewing the statute in the light of this principle, rooted in reason and justice, the legislative design palpably was to provide for a judicial determination of such an issue at the time it arises, when the proposed remedy, if it satisfies the

legal standard, can be effectively applied, and not at the final hearing of the cause, when, in the event of a determination adverse to the employe, it may not, due to the changes worked by time, be efficacious or practicable. The considerations underlying this policy are obvious. It is ordinarily a controversy of such moment as to require the judgment of an impartial tribunal. It would be manifestly unfair to place the burden of a correct decision solely upon the employe, and to charge him with the full consequences of error, even though his judgment was entirely free from bad faith. It is to be remarked, in passing, that an injured person is rarely moved by bad faith in resisting efforts to effect physical rehabilitation. That such is the scheme of the statute is implicit in the language employed to express the legislative intention. The employe suffers no loss of the prescribed compensation until he shall have refused or neglected to submit, at the expense of the employer, to the medical or surgical treatment which *the bureau shall determine to be "proper;"* his refusal to comply with the employer's demand in this regard incurs no such consequences. The spirit of the provision is to secure an orderly disposition of the controversy by the tribunal set up to resolve all other issues arising under the act.

The instant case furnishes an apt illustration of the wisdom of this legislative policy. As is frequently the case, the medical evidence was not one on operative procedure and the dangers incident to orthopædic surgery in its various forms. The consensus was that a general or local anaesthetic would be required; and there was evidence reasonably tending to show that, under the circumstances, the administration of either form of anaesthesia would be attended with danger. In the making of a diagnosis, the variable human factor necessarily plays a major part; and it is difficult, if not impossible, to escape the conclusion that the diagnosis here did not take into consideration the elements that determine the ultimate course of procedure, and was purely preliminary and tentative. Prosecutor was sixty-two years of age, and it was conceded that this constituted a serious handicap. The

employer's physician testified that a closed reduction operation would suffice, while the prosecutor, on the other hand, insisted he told her a reconstruction operation in the form of open reduction, under a general anaesthetic, would be necessary, and that he could not, even in that event, assure her of a satisfactory result, due to the fact that she did not receive timely treatment. Her reply was that she suffered from a "bleeding kidney," and could not therefore submit to this drastic treatment. There the matter seems to have ended. Although all physicians agreed that a physical examination was indispensable in determining the question of operative procedure, there was no such examination; and it can hardly be said that, under these circumstances, prosecutor's refusal to submit to the proposed operation was unreasonable. It was clearly her right to so refuse until competent medical authority had determined that the limitations of her resistance, arising from physical and psychological considerations, were not such as to impose unwarranted hazards upon her. It is to be observed in this connection that one of respondent's physicians found, shortly before the hearing, "a gangrenous change at the tip of the big toe."

The issue thus presented was one peculiarly for the determination of a disinterested forum at the time it arose. The employer did not invoke the jurisdiction of the bureau, but bided his time, and, in the compensation proceedings, when concededly the proposed treatment would be wholly ineffective, he raised the issue for the first time, and charged the employe with unreason in a matter plainly beyond her judgment. The injustice of this course of procedure is manifest. It was this that the legislature sought to correct by the statute under review. Unless we give the statute this construction, it will have no practical significance or utility, for, prior to its enactment, the employer was at liberty to follow the course pursued here. *McNally* v. *Hudson and Manhattan Railroad Co., supra.* There is a presumption against useless legislation.

And there is no merit in the suggestion that this statute was repealed by chapter 230 of the laws of 1921. *Pamph. L., p.* 736. Chapter 93 of the laws of 1919, *supra,* incorporated

"a clause in the * * * *Act* to be number 20 (e);" and there is no indication of a purpose to make this a subdivision of the then existing paragraph 20, which had no lettered subdivisions, nor that it was so considered when chapter 230 of the laws of 1921, *supra,* was adopted. This latter statute *amends* "paragraph twenty" of the Compensation act, in harmony with chapter 149 of the laws of 1918 (*Pamph. L., p.* 429), the act creating the compensation bureau, and for the first time subdivides the paragraph into clauses (a) and (b). This paragraph has never had a subdivision lettered (c) or (d). It is evident that the legislature did not, by this amendment, intend to disturb the statute under consideration.

Judgment reversed, and cause remanded for further proceedings in conformity with this opinion.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, LLOYD, DONGES, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFS-KEIL, RAFFERTY, JJ. 11.