188 P.2d 160

**FOWLER v. W. G. CONST. CO. et al.**

No. 4963.

Supreme Court of New Mexico.

Aug. 14, 1947.

Rehearing Denied Jan. 6, 1948.

George L. Reese, Jr. and Lon P. Watkins, both of Carlsbad, for appellant.

Seth & Montgomery, of Santa Fe, Jones, Hardie, Grambling & Howell, of El Paso, Tex., and John R. Brand, of Hobbs, for appellees.

SADLER, Justice.

This appeal presents two major questions for decision. They are (1) whether following entry of a judgment awarding compensation for disability under our Workmen's Compensation Law in which the court declined to suspend or reduce compensation unless the employee should undergo a surgical operation calculated to reduce the percentage of disability, the court can reopen the matter and modify the judgment in this respect more than 30 days after entry, even though the right so to do be expressly reserved therein; and (2) may an employee, otherwise entitled to compensation by reason of having incurred a compensable injury, be compelled to suffer reduction or suspension of compensation unless he consents to undergo an operation which does not endanger his life and is reasonably calculated to reduce the percentage of disability from the injury? Of course, a negative answer to the first inquiry will render unnecessary a decision of the second one. Hence, we seek immediately the true answer to the question first propounded.

The claim for compensation arose by reason of an injury suffered in the course of employment by the plaintiff (appellant) on June 23, 1943, in the collapse of a scaffold

on which he was standing thereby dropping him to the ground and resulting in the fracture of his left heel. Following the injury, medical and surgical treatment were furnished the plaintiff by his employer, W. G. Construction Company, one of the defendants, and he was paid compensation for a short time. Some question arising whether his disability might be substantially reduced by a surgical operation, concerning which misunderstanding developed, the defendants, stopped the payment of compensation after having paid same from date of injury until February 24, 1944, as for total disability at the rate of $18 per week.

Thereupon, on March 3, 1944, the plaintiff filed his claim for compensation to which an answer was interposed by the defendants, followed by an amended answer filed June 13, 1944. They pleaded payment of compensation as aforesaid, and offered to resume payments, tendering $252, the amount accruing from date payments were suspended to date of filing the answer. They further offered to continue these payments until relieved of the obligation by order of the court. The defendants then alleged that competent medical authority had recommended an operation which would reduce disability to a 10 per cent. loss in the use of his left foot but that plaintiff had declined to undergo the operation.

The day upon which the foregoing amended answer was filed, a hearing took place, in the course of which it was stipulated that plaintiff might accept the $252 tendered as compensation accrued and unpaid to date, without prejudice to his rights in the case. On the day of the hearing, which appears to have been very informal, with only the pleadings and a deposition of Dr. T. W. Bywaters, an orthopedic physician of Dallas, Texas, before the court, the defendants filed with the papers in the case a demand for physical examination by two Dallas physicians, the one named next above and Dr. P. C. Williams, his partner, all expenses to be paid by the defendants. No formal order seems to have been entered following this hearing.

The matter came on for further hearing on August 9, 1944, before the court at Lovington. The deposition of Dr. Bywaters, above mentioned, again was put in evidence. The plaintiff, in the meantime having submitted to the physical examination requested by defendants, the report of such examination, dated July 10, 1944, prepared by Dr. Bywaters of the medical firm of Williams and Bywaters of Dallas, Texas, was read in evidence; also a report by another orthopedic physician of Dallas, Dr. Sim Driver. It was agreed, both by the court and by all counsel, that the condition of plaintiff's foot was no different at the time of this hearing from what it was at the time of the former hearing on June 13, 1944.

At some time after this hearing, a judgment was prepared and signed by the judge, bearing the date of the hearing, namely August 9, 1944, although not filed for entry until December 12, 1944. Formal findings were not requested by either side and the court made none, although the judgment contains a finding that plaintiff was, at the date thereof, totally disabled by a compensable injury of a nature indicated above, and proceeding further, reads:

"It Further appearing that the medical authorities who have examined the claimant are not in agreement as to whether or not an operation should be performed upon claimants ankle at this time and that such operation might or might not be adviseable in the future.

"It Further appearing that at this time the defendants are in default in payment of compensation without reasonable cause or excuse and that Claimant should be paid compensation during the continuance of his disability and that his attorney's fees should be allowed in the sum of $500.00 which sum the Court finds to be reasonable, for services performed to and including the hearing of August 9th, 1944.

"It Is Therefore Ordered, Adjudged And Decreed that the Defendants pay to Claimant compensation at the rate of $18.00 per week, commencing seven days after the date of his injury on June 23, 1943, during the continuance of his total disability but for not more than five hundred fifty (550) weeks, less compensation previously paid. him, and that they also pay to his attorney,. C. Melvin Neal, the sum of $500.00 as his. fees in this matter, to and including the hearing of August 9th, 1944.

"It Is Further Considered And Ordered By the Court that this Judgment is subject to the right of defendants at any future date to reopen the same for the purpose of determining whether Plaintiff should be required to submit himself to a surgical operation."

A few days prior to entry of the foregoing judgment and on December 4, 1944, the defendants filed formal written motion,. reciting salient historical facts touching the plaintiff's injury, treatment, negotiations looking to an operation, the recommendation therefor by certain physicians. alleged to be competent, the furnishing to plaintiff by defendants of a certain type shoe recommended by Dr. Driver but that the plaintiff had failed to discard his. crutches and that he still used them. The motion set up the plaintiff's refusal to undergo the operation, notwithstanding the defendants' expressed willingness to pay all expenses incident thereto. It alleged further that the proposed operation would correct the plaintiff's condition to a point where not more than 10 to 15 per cent. disability would remain. The prayer was that the plaintiff be required to undergo the

operation or suffer a reduction in his compensation to that appropriate for the disability likely to remain following the operation proposed. The plaintiff's answer to this motion denied that he should be required to submit to the operation, or that competent medical opinion would approve the operation.

The next step in the proceedings took place on January 10, 1945. On that date, a hearing was held at Lovington, New Mexico, apparently on the issues raised by the aforesaid motion and the plaintiff's answer thereto, the parties and the court seemingly unmindful of the fact that the motion had not been refiled after entry of judgment on December 12, 1944. Again the reports ·of Drs. Williams and Bywaters and of Dr. Sim Driver were introduced in evidence and, in addition, a report of Dr. W. E. Badger of Hobbs, New Mexico, dated November 27, 1944. It should be recalled that the reports of Drs. Williams and Bywaters, dated July 10, 1944, and of Dr. Sim Driver of Dallas, dated June 29, 1944, were before the court at the August 9, 1944 hearing. There was then a divergence of opinion between Dr. Driver, on the one hand, and Drs. Williams and Bywaters on the other, as to the wisdom of an operation at the time. Dr. Driver recommended that plaintiff try out a certain type of shoe, with a progressively increasing use of the foot over a period of three months, before resorting to an operation. He agreed and advised, however, that if at the end of that time, satisfactory progress had not been made, the operation presently advised by Drs. Williams and Bywaters should be performed. At this hearing in January, 1945, the defendants took the position that, the three months waiting period advised by Dr. Driver having elapsed and the improvement expected not materializing, this physician would himself now join in recommending the operation.

Dr. Badger's report of November 27, 1944, discouraged hope for further improvement from use of the shoe suggested by Dr. Driver. Testifying at this hearing, Dr. Badger joined in approving the same kind of operation recommended by Dr. Bywaters of Dallas. Dr. Badger is the physician who first treated plaintiff and advised that he be taken to Dr. Bywaters in Dallas for examination and diagnosis. As a witness at this hearing, he agreed that it could not be said with any assurance that Dr. Driver would now join with Drs. Williams and Bywaters in recommending the operation without an opportunity to re-examine the plaintiff following the three months trial use of the shoe advised by him. The hearing apparently closed in an agreement by all parties with the court's approval for another examination of plaintiff by Dr. Driver in Dallas.

The next and final hearing occurred on February 13, 1945. The plaintiff had returned to Dallas pursuant to the under-

standing reached at the close of the hearing immediately preceding on January 10th and was there again examined by Dr. Driver and also by Dr. Bywaters. The report of each physician, based on the latest examination, was read in evidence. They were in entire agreement that the operation now offered the only hope for substantial relief promising ony appreciable reduction in the plaintiff's disability.

Accordingly, based upon these reports and other opinion evidence contained therein, at the conclusion of the hearing on February 13, 1945, the court signed an order modifying the previous judgment bearing date August 9, 1944, although not actually filed for entry until December 12, 1944. Briefly, the court again found in its latest order or judgment that plaintiff's disability was total and made the additional finding that it would be permanent unless and until the operation was performed on his foot. The operation was described in the order and a finding made therein that it would reduce plaintiff's permanent disability to not in excess of 25 per centum and that maximum recovery from the operation could be expected at the end of 11 months from its date. The order contained the further finding that defendants had offered to pay all expenses incident to such operation and that the same was essential, but that plaintiff, nevertheless, had refused to undergo the same and that his refusal was unreasonable.

After these findings, the adjudicating portion of the order, entered August 14, 1945, reads: "It Is, Therefore, Ordered That the Defendants continue to pay compensation to Claimant at the maximum rate for a period of eleven months following January 19, 1945, and that after the lapse of such eleven months they be permitted and authorized to pay Claimant compensation at the rate of $4.50 per week for an additional period of 100 weeks; that having made such payments, they be relieved of the obligation to pay any further amounts of compensation; that in the event Claimant elect to undergo such operation not later than 60 days from March 13, 1945, the offer to have such operation performed at Defendant's expense being still in force, the Defendants shall receive credit for 75 per cent of the compensation paid by them to Claimant after January 19, 1945, and shall also receive credit for the sum of $40.00 furnished to Claimant to defray the expenses of his last trip to Dallas for examination."

It will be recalled that the judgment of December 12, 1944, also contained a finding that the plaintiff was totally disabled and awarded him compensation at the rate of $18 per week during continuance of his disability but not to exceed 550 weeks (the appropriate award of compensation for total permanent disability). It declined to order the compensation reduced in the event of

plaintiff's unwillingness to undergo the operation at that time recommended by certain physicians testifying for defendants.

Was the trial court authorized thus to amend and modify the order or judgment theretofore made and entered by it on December 12, 1944, even though incorporating in the judgment express reservation of jurisdiction so to do? This question presents the first consideration and a decisive one, if it should be ruled in favor of the defendants who vigorously challenge the court's jurisdiction to make the changes it did at the time it did.

■ Although persuasive argument is presented in support of the plaintiff's contention on the jurisdictional question, a review and study of controlling statutes satisfies us that the trial court was not without jurisdiction to reopen the judgment entered December 12, 1944, and suspend payment, as ordered, of compensation previously awarded the plaintiff thereby, unless and until he should undergo the operation proposed. The judgment itself contained an express reservation of jurisdiction to reopen the judgment for further consideration of this matter. However, this reservation of jurisdiction would have been without force or effect unless applicable statutes gave the court power to amend or modify the judgment in the manner it did after the 30 day period during which a district

court holds jurisdiction over its judgments generally. 49 C.J.S., Judgments, § 230, page 444 and Hill v. St. Louis, 20 Mo. 584; Williams v. Williams, 107 Ky. 496, 54 S.W. 716.

The language in the act relied upon to sustain the right to modify the original judgment in the respect indicated is 1941 Comp., § 57-920, reading: "If any workman shall persist in unsanitary or injurious practice which tends to imperil or retard his recovery or shall refuse to submit to such medical or surgical treatment as is reasonably essential to promote his recovery, the court may in its discretion reduce or suspend his compensation."

It is found in the second paragraph of a section the first part of which imposes upon an injured employee, upon written request of his employer where the right to compensation under the act exists, from time to time, to submit to a physical examination by a competent physician, to be selected and paid for by the employer, or one selected by the court, with the right in the employee to have present a physician selected and paid for by him. The defendants would place this language on a practical parity with, or make it analogous to, that to be found in 1941 Comp., § 57-925, giving unto the employer the right to require any employee awarded compensation for disability under the act to submit himself to medical examination by a duly licensed physician for the stated purpose of

determining whether the workman has so far recovered that his earning power at any kind of work is restored. The section mentioned reads: "Any workman awarded compensation for disability under this act (§§ 57-901—57-931) shall, previous to the falling due of any instalment of compensation provided for in the judgment therefor upon the order of the court if requested by his employer, or any other person bound by judgment therefor, submit himself to medical examination by a physician licensed to practice medicine in this state, at a place within this state designated by the person so demanding and which shall be reasonably convenient for the workman, and said workman may have a licensed physician present of his own selection. The purpose of such examination shall be to determine whether the workman has recovered so that his earning power at any kind of work is restored, and the court shall be empowered to hear evidence upon such issue and hearing. If it be discovered by such examination and hearing that diminution or termination of disability has taken place the court shall order diminution or termination of payment of compensation as the facts may warrant. If the workman in such case refuses to submit to such examination or obstructs the same, his right to monthly payments shall be suspended until such examination has taken place, and no compensation shall be payable during such period of refusal."

The plaintiff urges upon us a construction that will limit the application of the language quoted above from § 57-920 to cases or claims for compensation prior to trial and judgment and the language of the later section to cases where the claim for compensation, either by agreement or pursuant to trial in the event of a contest, has been placed in judgment. There is support in the language of the later section for this construction as to it. The condition under which the workman may be compelled to submit to a medical examination, or suffer a suspension in the payment of his compensation upon his refusal, is that he must have been "*awarded compensation* for disability" and the right to make the request for medical examination is to be exercised by the employer "previous to the falling due of any instalment of compensation provided for *in the judgment therefor*," etc. (Emphasis ours).

Plaintiff mainly relies on the New Mexico cases of Norvell v. Barnsdall Oil Co., 41 N.M. 421, 70 P.2d 150, Garcia v. Anderson, 41 N.M. 517, 71 P.2d 686, and Hudson v. Herschbach Drilling Co., 46 N.M. 330, 128 P.2d 1044, in support of his claim that the trial court was without jurisdiction to modify the judgment of December 12, 1944, as it did when it did. For cases from other jurisdictions he cites us to Gray v. Hercules Powder Co., 160 Kan. 767, 165 P.2d 447; United Fruit Co. v. Pillsbury, D.C., 55 F.2d 369; Crane Enamelware Co.,

v. Dotsòn, 152 Tenn. 401, 277 S.W. 902; Crane Enamelware Co. v. Dotson, (2nd Appeal) 159 Tenn. 561, 20 S.W.2d 1045, and Kline v. Industrial Insurance Commission, 101 Wash. 365, 172 P. 343. See, also, extensive annotations in 165 A.L.R. 9.

In Hudson v. Herschbach Drilling Co., supra [46 N.M. 330, 128 P.2d 1045], we quote from 1941 Comp., § 57-916, relating to judgments in compensation cases, as follows: "Any and all such judgments rendered and executions issued hereunder shall have the same force and effect and be governed by the laws of this state as judgments or executions in civil cases." and then observe:

"We must look to the statutes and general law for authority to set aside a judgment in compensation cases if the applicant is the workman, but if the employer or his surety is the applicant, then provision is made therefor by the act itself.

"Workmen's compensation statutes are sui generis and create rights, remedies and procedure which are exclusive. They are in derogation of the common law and are not controlled or affected by the Code of procedure in suits at law or actions in equity except as provided therein. Pound v. Gaulding, 237 Ala. 387, 187 So. 468; Smith v. Kiel, Mo.App., 115 S.W.2d 38. But the New Mexico act provides that we must look to the code of procedure and general law for authority to set aside such judgments."

Garcia v. Anderson, supra, is cited to support the plaintiff's contention that the motion of defendants filed a few days prior to the entry of the judgment of December 12, 1944, if treated as refiled subsequent to the entry of such judgment and on January 10, 1945, when the issues raised by the motion were heard, would stand denied by operation of law because not ruled upon within 30 days after such filing date.

Nothing said by us in the Hudson case controls the decision here, if we can find in the act itself language retaining jurisdiction in the district court to modify the judgment of December 12, 1944, as it did.

We believe the two sections of the act dealing most directly with the question confronting us, namely, §§ 57-920 and 57-925, complement each other and when read in pari materia confer authority on the trial court to reopen its previous judgment awarding compensation to the plaintiff. Section 57-916 on judgments, authorizing executions for future instalments provided for in the judgment upon affidavit of the workman that same is unpaid and that his disability continues, adds: "Unless application shall have, previous to the issuance of such execution, been made and filed with said clerk by some one of the parties against whom said judgment has been ren-

dered for the appointment of a physician, *in accordance with section 19 (§ 57-920) hereof,* for the purpose of examination of said workman, in which event the issuance of such execution shall await the further order of the court in the premises." (Emphasis ours).

It is worthy of note that the limitation on the right to an execution on judgment already entered for compensation is an application for physical examination made in accordance with the very section, 57-920, which contains the provision authorizing reduction or suspension of compensation for refusal by workman to submit "to such medical or surgical treatment as is reasonably essential to promote his recovery." The act did not affix the limitation on right to execution to an application for medical examination of the workman made in accordance with § 57-925, the sole purpose of which is to ascertain whether he has so far recovered that his earning power at any kind of work is restored.

The sections of the statute, as stated, complement each other. Under § 57-916, even though judgment has been entered, execution may be denied if application has been made for physical examination in accordance with § 57-920. What is the purpose of the examination, if not to determine the extent of the workman's disability in the one case, or, in another, to determine what medical or surgical treatment will best pro-

mote recovery? Due to circumstances, the ascertainment of the latter may be as important after judgment as before due to new discoveries and rapid advancement in medical and surgical science. In other words, the examination authorized in § 57-920 is for the purpose of discovering and devising means best calculated to bring about recovery. The physical exmination mentioned in § 57-925 is for the purpose of ascertaining to what extent the means employed have succeeded. This claim of error must be denied.

We turn now to a consideration of the second question, namely, whether the trial court erred in reducing the plaintiff's compensation from an amount appropriate to total permanent to an amount appropriate to total partial disability. In its order reducing plaintiff's compensation, signed February 13, 1945, and entered on August 14, 1945, the court incorporated pertinent findings, as follows:

"That Claimant is totally disabled as a result of his injury, which disability will be permanent unless and until an operation is performed on his foot; that such disability consists principally of pain in the foot due to an arthritis condition in the joint between the heel and the ankle bone;

"That heretofore the Defendants requested Claimant to submit to an operation on his foot, the same being known as a triple

arthrodesis designed to stabilize the subastragalar joints, which operation Claimant declined to undergo; that competent medical authority, namely, Doctors W. E. Badger of Hobbs, New Mexico, and Doctors Sim Driver and T. W. Bywaters of Dallas, Texas, after having examined Claimant on January 19, 1945, concurred in the recommendation that claimant undergo such operation, which contemplates the removal of cartilage from between the heel bone and the ankle bone, thus forcing these bones into close contact with one another so they would thus be fused and grow together stating that such an operation would result in partially correcting and curing Claimant's present disability; that such operation would restore the normal functions of the foot except for a permanent disability thereto of not in excess of .25 per cent of the foot, due to loss of motion, and

"The Court further finds that the proposed operation is reasonably essential to promote and effect Claimant's recovery from his present disability and that his disability can thereby reasonably be expected to be reduced to not more than 25 per cent in the use of the foot; that Defendants, after such doctors had advised that the same be performed, tendered such operation to Claimant and agreed to defray all the expenses incident thereto and to pay compensation for so long *as* period of time as Claimant was entitled thereto, following the operation, and to pay compensation for the resulting partial permanent disability following recovery from such operation; that Claimant has refused to undergo such operation and that his refusal so to do is unreasonable; that Claimant owes Defendants the duty of submitting to such operation in order to reduce the amount of his disability; that had Claimant submitted to such operation when last tendered him on January 19, 1945, he could reasonably have been expected to have attained his maximum recovery therefrom within a period of eleven months from the date of the operation."

The adjudicating portion of the order already has been set out. Under its terms the plaintiff was to be paid compensation for total permanent disability for 11 months from January 19, 1945, the date upon which he was tendered and refused the operation recommended by the physicians. This period of 11 months represented the time estimated by the physicians for bringing the plaintiff maximum recovery from the operation. While medical testimony spoke of the procedure as a major operation of an orthopedic type, one of the physicians testifying, continued: "We do not ordinarily think such an operation is dangerous. The dangers that one would encounter in any operation are those of giving an anesthetic or secondary infection. Those things happen occasionally. * * *

It probably is as safe as any major operation of an orthopedic type that we do."

The three physicians testifying, Dr. Bywaters, Dr. Driver and Dr. Badger, all concurred in recommending the operation as a means of substantially reducing the plaintiff's disability. His own attorney urged that he undergo the operation. The plaintiff explained why he did not want the operation performed by expressing the view that the outcome would be doubtful and he did not think it would benefit him. He summed up by stating: "The two main reasons are because I do not know whether my heart would stand the ether and the gas that would have to be put to me to undergo the operation, and the main reason I do not want to have it done is because I do not think it would benefit me any."

The findings contained in the order reducing the plaintiff's compensation at the expiration of 11 months from the time the operation was tendered him are supported by substantial evidence. The trial court's conclusion that plaintiff's refusal was unreasonable is the only proper one to be deduced from the findings made. The authorities fully support the trial court's action. Under an annotation entitled: "Workmen's Compensation: Duty of injured employee to submit to operation or to take measures to restore earning capacity", appearing in 6 A.L.R. 1260, supplemented in 18 A.L.R. 431, 73 A.L.R. 1303 and 105

A.L.R. 1470, many cases touching the question involved will be found listed and discussed. The cases to which the annotations are appended, in the order of their reporting, are O'Brien v. Albert A. Albrecht Co., 206 Mich. 101, 172 N.W. 601, 6 A.L.R. 1257; Henley v. Oklahoma Union Railway Co., 81 Okl. 224, 197 P. 488, 18 A.L.R. 427; Consolidated Lead & Zinc Co. v. State Industrial Commission, 147 Okl. 83, 295 P. 210, 73 A.L.R. 1298, and Robinson v. Jackson, 116 N.J.L. 476, 184 A. 811, 105 A.L.R. 1466.

The rule deducible seems to be that an injured workman will be denied compensation for an incapacity which may be removed or modified by an operation of a simple character, not involving serious suffering or danger. A refusal to undergo an operation under such circumstances is deemed unreasonable. Consolidated Lead & Zinc Co. v. State Industrial Commission, supra. On the other hand, if the operation be of a major character and attended with serious risk to life or member, the rule is that an injured employee's refusal to submit to such operation is deemed not unreasonable, and compensation should not be denied on that account. Grant v. State Industrial Accident Commission, 102 Or. 26, 201 P. 438. Examination of the record satisfies us that the operation proposed, although designated by one of the physicians as a "major operation of an orthopedic type," is not one which justifiably could be classified as dangerous to life or limb. The

trial court was warranted in characterizing the plaintiff's refusal as unreasonable in ordering the reduction in compensation it did in the event of a refusal.

Counsel argues that because the order reducing compensation, signed February 13, 1945, was not entered until August 14, 1945, it was not until the latter date that plaintiff was put to an election in reference to an operation and when so put the right to it already had expired under terms of the order or, to use the language of his counsel: "the axe descended simultaneously with the determination." He adds: "That judgment reduced appellant's (plaintiff's) compensation immediately although under it he could still receive his $18.00 per week for about four months. The appellant could not on August 14, 1945 do anything to preserve his rights except appeal."

The plaintiff, himself, was in court and had just finished testifying as a witness when the trial judge announced from the bench what order he would make as a result of this last hearing. As a witness on this final hearing, the plaintiff repeated more than once his decision not to undergo the operation recommended by three physicians and even urged by his own attorney. His reasons already have been stated. While it is true the order signed by the court on February 13, 1945, was not actually entered until six months later, it was stated at oral argument without challenge, what

an examination of the whole record seems to make plain, that the reason for withholding from entry not only this order but as well the earlier one entered December 12, 1944, for the periods indicated was to give the plaintiff more time to make up his mind and, perhaps, to become satisfied to undergo the proposed operation. Whatever the reason, and giving all force to the doctrine that a judgment is not effective until entered, it certainly cannot be said, nor does it lie in the plaintiff's mouth to assert, that he was not given every opportunity to accept, at the expense of the defendants, the operation tendered. It, indeed, would be a repudiation of what the record boldly proclaims, to hold otherwise.

The trial judge was unusually solicitous of the plaintiff's rights and throughout extended him every safeguard. The judgment he entered is correct and should be affirmed.

It is so ordered.

BRICE C. J., and LUJAN and COMPTON, JJ., concur.

McGHEE, J., having tried the case below, did not participate.

On Motion for Rehearing.

Motion for rehearing has been filed in which the plaintiff (appellant) questions correctness of the opinion filed on several

grounds. We are not persuaded the opinion is erroneous in any of the respects challenged and thus determining, ordinarily, we should feel moved to dispose of same by a formal order merely denying the motion. However, counsel for plaintiff questions the accuracy of a statement in the opinion mentioning his failure to challenge a declaration of opposing counsel at oral argument as to reason for withholding from entry for stated periods certain orders touching compensation. While not disputing that the declaration was made, he disclaims having heard same and points out that if he had heard it he would have been in no position to deny or affirm, not having represented the plaintiff at the trial.

The language complained of appears in the following sentence from the original opinion, to wit: "While it is true the order signed by the court on February 13, 1945, was not actually entered until six months later, it was stated at oral argument without challenge, what an examination of the whole record seems to make plain, that the reason for withholding from entry not only this order but as well the earlier one entered December 12, 1944, for the periods indicated, was to give the plaintiff more time to make up his mind and, perhaps, to become satisfied to undergo the proposed operation."

It is unfair to counsel to attach significance to his failure to deny something transpiring at a trial at which he was not present representing any of the parties. When we made the statement we overlooked this fact. Accordingly, and in fairness to counsel so much of the quoted language as makes mention of this circumstance is withdrawn. Neither counsel nor his client should be prejudiced by the former's failure to deny something said to have transpired when he was not present.

Of course, by the same token, the defendants should suffer no prejudice through substitution of counsel in giving meaning, characterization and effect to what transpired below when the plaintiff was represented by other counsel. We have no quarrel with counsel's statement of the steps to be taken in ordinary sequence as a predicate to suspending or reducing· a workman's compensation where he unwarrantably refuses to submit to surgical treatment found to be reasonably essential to improvement or recovery. Where counsel and the court differ is as to whether there had been a refusal by the plaintiff. If anything can be said to stand out in this record it is that court, counsel for defendants and the then counsel for plaintiff left the February, 1945, hearing faced with a refusal by plaintiff to submit to the operation which the judge announced from the bench he was recommending under penalty of a reduction in plaintiff's compensation if he persisted in such refusal. The court said:

"The Court:—(after argument by Mr. Brand) I do not see how I can do anything

on this except to order a reduction in this man's compensation. I believe eleven months is the longest time and reduce it to twenty-five percent after that if he refuses to take the operation. They would have to pay him all that time if he had it.

"The Witness:—I believe each one of these specialists should know what they are doing, and if they are wrong about one thing they could be about another, and I would want to know what the specific outcome of this operation would be.

"The Court:—They both think you would have a very decided improvement."

The order hereinabove quoted was signed, bearing date February 13, 1945, although withheld from entry until August 14, 1945, obviously with the thought that plaintiff, as indicated by the judge from the bench, might suffer a change of heart and submit to the operation. Of course, the matter should have been handled otherwise, to present the appearance of regularity and orderly sequence. But objection was not then taken in that behalf, or that plaintiff was not being given opportunity following entry of the order to elect whether to submit to the operation. In the mind of the court and all counsel he had already refused, even in the face of urgings from his own counsel, although as indicated the door continued to be held open for him for some time had he seen fit to enter through.

Even now, in this court, while insisting upon the naked legal right to time a refusal to follow formal entry of the order which the judge announced from the bench he was making, present counsel can give no assurance, at least offers none, that if the cause should be remanded, the plaintiff would submit to the operation. It is significant that not once during various hearings below did plaintiff indicate a willingness to undergo same if approved by the court. In the face of pronounced unwillingness to do so as shown by his testimony, the then counsel may have thought it superfluous to inquire.

The motion for rehearing will be denied and

It is so ordered.

BRICE, C. J., and LUJAN and COMPTON, JJ., concur.

McGHEE, J., having tried the case below, did not participate.