**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2392-24

JASON GRASSO,

     Petitioner-Respondent,

v.

MONMOUTH COUNTY
SHERIFF'S DEPARTMENT,

     Respondent-Appellant.

_____

Submitted April 29, 2026 – Decided May 18, 2026

Before Judges Mayer and Gummer.

On appeal from the Division of Workers' Compensation, Department of Labor and Workforce Development, Claim Petition No. 2017-8396.

Thomas J. Catley, attorney for appellant.

Shebell & Shebell, LLC, attorneys for respondent (Danielle S. Chandonnet, on the brief).

PER CURIAM

In this workers' compensation case, Monmouth County Sheriff's Department (MCSD) appeals from a judgment awarding petitioner Jason Grasso an increase in permanent disability as well as fees and costs. Because the decision was supported by sufficient credible evidence in the record and the workers' compensation judge did not abuse his discretion in awarding fees and costs, we affirm.

Petitioner was employed by MCSD as a corrections officer when his big toe on his right foot was injured while he was attempting to stop an altercation between inmates in 2016. Petitioner underwent surgery in 2019 in an effort to repair the toe. The surgery included "metatarsophalangeal joint ligament repair" and "metatarsal bone grafting."

In a June 24, 2021 order, a compensation judge approved a settlement of petitioner's workers' compensation claim. In that order, petitioner was awarded a permanent disability of 27.5% of his right foot. On May 16, 2022, petitioner filed an application for review or modification of that award. Petitioner stated in the application he "ha[d] increased pain and disability and [wa]s in need of treatment." The claim proceeded to trial before the compensation judge.

At trial, petitioner testified he had re-opened the case when, despite the surgery, his toe started to swell during the day and he began to limp again. He

A-2392-24

asserted the injury after the surgery had impacted his ability to engage in sports and activities with his children. According to petitioner, after he re-opened the case, he underwent an MRI and a podiatrist who had reviewed the MRI told him he saw "an issue" and advised him his "only option" was to "fus[e] the toe together" surgically. Petitioner did not "want to go that route," concerned about "the repercussions of that surgery" and whether he would be able to "perform [his] job duties" after the recommended surgery. He testified he believed the previous surgery had made his condition worse, not better.

Petitioner presented Dr. Alan Nasar as an orthopedics expert. Dr. Nasar had examined petitioner and reviewed his prior and most recent MRIs. Dr. Nasar testified the latest MRI revealed petitioner had experienced "significant degenerative changes at the first metatarsal phalangeal joint of the great toe" since the surgery. Dr. Nasar expected the degeneration to worsen over time. Dr. Nasar also found petitioner's mobility in his foot had decreased. He described petitioner's 2019 surgery as "temporarily successful" with "long term failure with degeneration taking over as the primary problem." Dr. Nasar testified the fusion surgery recommended to petitioner would be the "most reliable surgical option" with other options being less optimal. Dr. Nasar testified that without surgery petitioner's degeneration will continue.

A-2392-24

Respondent presented Dr. Andrew Hutter as an orthopedics expert. Dr. Hutter testified "there was no material worsening in [petitioner's] condition since he had his permanency rating." He nevertheless acknowledged the most recent MRI report stated the images showed "moderate to severe degenerative changes," thereby demonstrating a progression since the 2018 MRI, which showed only mild degeneration. Dr. Hutter believed fusion surgery was a "reasonable thing to do for [petitioner's] condition" but stated he had not been asked to determine whether petitioner would benefit from additional surgery.

In a February 24, 2025 oral decision, the judge held petitioner had proven by a preponderance of the evidence his entitlement to an additional award due to an increase in his permanent disability. He found petitioner had established "a material worsening of the disability" and that the recent MRI provided objective medical evidence of a material worsening of petitioner's condition. The judge rejected Dr. Hutter's testimony, finding Dr. Hutter had focused on petitioner's ability to work, had not appropriately considered other activities of daily living, and had acknowledged in his report the latest MRI report disclosed "moderate to severe degenerative changes," which "had progressed from 2018." The judge held petitioner had sustained an increase in permanent disability up to thirty-five percent of his right foot.

4

The judge then addressed the apportionment of fees and costs. The judge confirmed petitioner's counsel had made a settlement demand in September of 2023. The judge asked MCSD's counsel if MCSD had made a counteroffer. MCSD's counsel informed the judge he had "had extensive discussions with the County representatives regarding what exactly . . . the demand was and also what [the judge's] recommendation was and despite those efforts [he] did not receive any negotiating authority from the County . . . [and] was told that this case would have to be tried." The judge found MCSD's failure to make a counteroffer and its insistence in trying the case to conclusion was "not dealing in good faith." The judge noted this case was the first time in his ten years on the bench that a "respondent did not even convey an offer." He rejected any suggestion MCSD's failure to make a counteroffer was reasonable based on its expert's concluding petitioner had no increase in disability, finding it was "very common for the respondent's doctor especially on a re[-]opener to have a zero increase." The judge also did not "blame the petitioner for declining the surgery because he testified that he felt like the first surgery made his condition worse" and "under those circumstances [the judge] would have made the same decision as [petitioner]."

The judge memorialized his decision in a February 24, 2025 judgment,

awarding petitioner a permanent disability of thirty-five percent of the right foot and all medical and counsel fees.   This appeal followed.

"Our review of decisions from the workers' compensation court are decidedly deferential" in recognition of "'the compensation court's expertise and the valuable opportunity it has had in hearing live testimony.'"  Ripp v. County of Hudson, 472 N.J. Super. 600, 606 (App. Div. 2022) (quoting Hager v. M&K Constr., 246 N.J. 1, 18 (2021)).   Accordingly, our review in workers' compensation cases is generally "limited to whether the findings made could have been reached on sufficient credible evidence present in the record."  Hersh v. County of Morris, 217 N.J. 236, 242 (2014) (quoting Sager v. O.A. Peterson Constr., Co., 182 N.J. 156, 164 (2004)).   We reverse a compensation judge's findings only if "they are 'manifestly unsupported by or inconsistent with competent relevant and reasonably credible evidence as to offend the interests of justice.'"  McGory v. SLS Landscaping, 463 N.J. Super. 437, 452-53 (App. Div. 2020) (quoting Lindquist v. City of Jersey City Fire Dep't, 175 N.J. 244, 262 (2003)).   "[W]e review the court's legal findings and construction of statutory provisions de novo."  Hager, 246 N.J. at 18.

On appeal, MCSD argues the judge erred in awarding an increase in disability when petitioner had refused offered medical treatment.  We disagree.

6

The Workers' Compensation Act, N.J.S.A. 34:15-1 to -147, addresses an employee's "[r]efusal of medical and surgical treatment":

> Whenever it shall appear that an employer is being prejudiced by virtue of the refusal of an injured employee to accept proffered medical and surgical treatment deemed necessary by the physician selected by the employer, or his failure or neglect to comply with the instructions of the physician in charge of the case, the employer is hereby authorized to file a petition with the workmen's compensation bureau, which is hereby empowered to order proper medical and surgical treatment at the expense of the employer. In the event of refusal or neglect by the employee to comply with this order the bureau shall make such modification in the award contained in the schedule as the evidence produced shall justify.
>
> [N.J.S.A. 34:15-23.]

"The rule applicable in New Jersey with respect to the duty to submit to an operation was set forth in Robinson v. Jackson, 116 N.J.L. 476, 478 (E. & A. 1936)." Lorenc v. Chemirad Corp., 37 N.J. 56, 78 (1962) (citation reformatted).

> The right of the employer to impose medical or surgical treatment upon the injured employee is not, of course, an absolute one. Compulsion in such matters . . . needs be cautiously exercised. The employer's right in this regard is necessarily circumscribed by the correlative right of the employee to avoid, if he chooses, peril to life, however slight, and undue risks to health, and anguish that goes beyond the bounds of reason. The employee's refusal to submit to the tendered treatment, whether medical or operative, is not unreasonable, and therefore unjustifiable in the legal sense, unless it is

7

free from danger to life and health and extraordinary suffering, and, according to the best medical or surgical opinion, offers a reasonable prospect of restoration or relief from the disability. And the reasonableness of the refusal, tested by this standard, is one of fact.

[Id. at 78 (quoting Robinson,116 N.J.L. at 478).]

Robinson involved a worker's compensation claim. 116 N.J.L. at 477. Courts have applied the Robinson standard to determine if plaintiffs in personal-injury actions met their duty to mitigate damages by undergoing surgery. Albert v. Monarch Fed. Sav. & Loan Ass'n, 327 N.J. Super. 462, 465 (App. Div. 2000) (referencing the standard set out in Robinson,116 N.J.L. at 478); see also Cannon v. N.J. Bell Tel., 219 N.J. Super. 304, 314 (App. Div. 1987) (finding "[w]hile the patient clearly has the right of self-determination with respect to acceptance or rejection of medical treatment, an unreasonable determination should not require the party responsible for the injury to pay greater damages because of the patient's freedom of choice.").

We perceive no basis to disturb the judge's finding that petitioner's refusal of the proposed fusion surgery was reasonable under the circumstances. The judge had the opportunity to assess the credibility of petitioner's testimony about why he had declined to undergo the surgery. See McGory, 463 N.J. Super. at 452 ("Deference is given to the factual findings of a judge of compensation who

8

has the opportunity to assess the witnesses' credibility from hearing and observing their testimony."). The judge's factual findings regarding the reasonableness of petitioner's refusal as well as the increase in his permanent disability were supported by substantial credible evidence.

MCSD argues on appeal that instead of awarding an increase in disability, the judge should have considered issuing a "medical monitoring" order, "which would preserve [petitioner's] right to have the surgery sometime in the future, but not increase his disability rating." However, MCSD did not ask the judge to issue a "medical monitoring" order in lieu of awarding an increase in disability. Accordingly, we decline to consider MCSD's "medical monitoring" argument. See Alloco v. Ocean Beach & Bay Club, 456 N.J. Super. 124, 145 (App. Div. 2018) (applying "well-settled" principle that appellate court will not consider an issue that was not raised before the trial court).

MCSD also challenges the fee award, contending the judge should have conducted a more thorough fact-finding hearing before awarding the fees. We disagree.

We review a trial court's fee determinations "with deference and will disturb them 'only on the rarest occasions, and then only because of a clear abuse of discretion.'" DeSanctis v. Borough of Belmar, 455 N.J. Super. 316, 335 (App.

Div. 2018) (quoting <u>Rendine v. Pantzer</u>, 141 N.J. 292, 317 (1995)).  "An abuse of discretion occurs when a decision was 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'"  <u>Wear v. Selective Ins. Co.</u>, 455 N.J. Super. 440, 459 (App. Div. 2018) (quoting <u>Flagg v. Essex Cty Prosecutor</u>, 171 N.J. 561, 571 (2002)).  "Reversal is warranted when 'the discretionary act was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amount[ed] to a clear error in judgment.'"  <u>Ferolito v. Park Hill Ass'n</u>, 408 N.J. Super. 401, 407 (App. Div. 2009) (quoting <u>Masone v. Levine</u>, 382 N.J. Super. 181, 193 (App. Div. 2005)); <u>see also</u> <u>Horne v. Edwards</u>, 477 N.J. Super. 302, 315 (App. Div. 2023) (same).

"The Legislature has provided that a judge of compensation 'may allow to the party in whose favor judgment is entered, costs of witness fees and a reasonable attorney fee, not exceeding [twenty percent] of the judgment.'"  <u>Quereshi v. Cintas Corp.</u>, 413 N.J. Super. 492, 499 (App. Div. 2010) (quoting N.J.S.A. 34:15-64(a)); <u>see also</u> <u>Collas v. Raritan River Garage, Inc.</u>, 460 N.J. Super. 279, 284 (App. Div. 2019) ("A judge of compensation, subject to the twenty-percent cap, may adjust a fee award and the proportional allocation thereof depending on the judge's assessment of reasonableness.").  Thus, "the

10

judge of compensation has the discretion to award a reasonable fee up to [twenty percent] of the judgment." Quereshi, 413 N.J. Super. at 499.

"The usual limitation on the amount of fee awards reflects the underlying philosophy of the workers' compensation remedy that relies on prompt recognition of an employer's responsibility for workplace injuries and prompt payment of benefits." Id. at 500. However, "[t]he judge of compensation may also impose a higher proportion of the attorneys' fees on the employer when the judge is satisfied that there has been undue delay in the recognition of liability." Id. at 500; see also Alvarado ex rel. Velez v. J & J Snack Foods Corp., 397 N.J. Super. 418, 436 (App. Div. 2008) ("unreasonable and unjustified delay in admitting liability may be considered on the allocation of an attorney fee between the petitioner and respondent").

Applying that standard to the record before us, we perceive no abuse of discretion in the fee and cost award and no need for a more thorough fact-finding hearing as suggested by MCSD.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

11                                                                        A-2392-24