No. 36,501

WILLIAM H. GRAY, *Appellee* and *Cross-appellant,* v. HERCULES POWDER COMPANY (Respondent), and EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY (Insurance Carrier), *Appellants.*

(165 P. 2d 447)

Opinion filed January 26, 1946.

*James K. Cubbison,* of Kansas City, argued the cause, and *Blake A. Williamson, Lee Vaughan,* both of Kansas City, and *Howard E. Payne,* of Olathe, were on the briefs for the appellants.

*Joseph Cohen,* of Kansas City, argued the cause, and *Clayton Brenner,* of Olathe, was on the briefs for the appellee.

The opinion of the court was delivered by

HOCH, J.: This is an appeal by the employer from an award under the workmen's compensation act. The principal question presented is whether an award which has been made by the district court may be modified by that court within the twenty days thereafter provided by the statute for taking an appeal to this court on questions of law.

Brief recital of the facts will suffice for presenting the issue. The claimant, William H. Gray, an employee of the Hercules Powder Company at De Soto, Kan., was injured on September 11, 1944, while attempting to lift a rocket to put it in a wooden case on a truck. He filed a claim under the workmen's compensation act, hearing was duly held before the commissioner and an award made in his favor on March 31, 1945. The commissioner's award was based upon a finding of temporary total disability for eleven weeks and of partial permanent disability of ten percent for an indefinite period subsequent to December 27, 1944, not to exceed 404 weeks. The commissioner also allowed $500 to cover medical and hospital expenses.

Upon appeal by the respondent to the district court, that court made its award on July 31, 1945. It followed the terms of the commissioner's award as to the 11 weeks of temporary total disability and as to the allowance for medical and hospital expenses, but disallowed the claim entirely as to partial permanent disability. Up to this point no question is raised as to the regularity of the proceedings. On August 5, 1945—five days after the court's award had been entered—the claimant filed a motion to modify the court's findings and award. To this motion the respondent filed an objection on the ground that the court had no jurisdiction to modify the award. On August 14, 1945—fourteen days after the award had been entered—the court sustained the claimant's motion to modify, stating:

"The court further finds that at the time it rendered its findings and award in the above entitled case on the 31st day of July, 1945, that it was in error in finding from the evidence that the claimant was not entitled to an

award of permanent partial disability following his period of temporary total disability. The court finds that the findings and award of the workmen's compensation commissioner made and entered in this case on the 31st day of March, 1945, should be adopted by this court and said findings and award so made by the workmen's compensation commissioner on the 31st day of March, 1945, are hereby adopted and approved by this court and the award heretofore made by this court on the 31st day of July, 1945, are modified and changed so far as they differ and change the award and findings of the workmen's compensation commissioner."

The court then formally entered a new award in conformity therewith. From such new award of August 14, 1945, this appeal by the respondent was taken. The claimant thereupon filed what he termed a "cross-appeal" from the court's first award, made on July 31, 1945, stating in his notice of appeal:

"This cross-appeal is taken as a precautionary measure in the event the supreme court of the state of Kansas should hold that the findings and award made by the district court of Johnson county, Kansas, on the 14th day of August, 1945, modifying the findings and award made by said court on the 31st day of July, 1945, was erroneous and without right, power, authority or jurisdiction."

We first take note of appellee's contention that the modification and new award, made on August 14 was in fact merely the correction of an "error," and should be regarded as in the nature of a *nunc pro tunc* order. Whether it would strengthen appellee's position to treat it as such we need not discuss. The record does not support appellee's interpretation. When announcing the award on July 31, 1945, the court stated that it did not believe the claimant had proved any permanent disability resulting from the injury. Clearly the award first made represented just what was intended at the time. The court simply came to a different conclusion after further consideration of the record.

Soon after the original enactment of a workmen's compensation law in this state in 1911 it was held that for injuries compensable under the act no recovery otherwise could be had. (*Shade v. Cement Co.*, 92 Kan. 146, 139 Pac. 1193 [1914]; *McRoberts v. Zinc Co.*, 93 Kan. 364, 144 Pac. 247 [1914].) This rule has since been consistently followed. And following the comprehensive enactment of 1927 (Laws 1927, ch. 232) it has been held in a long line of decisions that the act is not cumulative or supplementary in character, but that it is complete and exclusive not only as to relief for injuries within its purview but as to procedures to be followed.

In *Norman v. Consolidated Cement Co.*, 127 Kan. 643, 274 Pac. 233—decided before the act was amended to permit appeals to this court on questions of law—an attempt was made to secure appellate review in this court under the general provisions of the code of civil procedure. Review was denied and in the opinion it was said:

"In a comprehensive statute the legislature manifestly undertook to cover every phase of the right to compensation and of the procedure for obtaining it. It provided an administrative method in order to avoid the delay resulting from prolonged litigation and the uncertainty and expense attending it. Another feature is that when both parties unite in this plan to adjust compensation it tends to prevent friction and hostility between employers and employees that frequently arise in actions based on negligence of the parties. The substituted remedy being complete with a procedure of its own, it must be regarded as exclusive. It being substitutional and complete and exclusive, we must look to the procedure of the act for the methods of administration. We are not warranted in borrowing rules and methods from the civil code not included in the act itself, methods prescribed for ordinary civil actions which the legislature for obvious reasons was seeking to avoid, and for which it provided a substitute." (p. 649.)

In *Walz v. Missouri Pac. Rld. Co.*, 130 Kan. 203, 285 Pac. 595, it was said that in the opinion in the Norman case, *supra*, "it was made as plain as clear and forceful English composition could make it that the legislature chose what procedure it would adopt, disregarded rules and methods of civil procedure, and substituted a system of its own, complete, explicit and exclusive." (p. 204.)

In *Willis v. Skelly Oil Co.*, 135 Kan. 543, 11 P. 2d 980, it was held that the district court, on appeals in compensation cases, can only grant or refuse compensation or increase or diminish an award made by the commissioner and has no power (citing the Norman case, *supra*, and other cases) to remand the case to the commissioner for further proceedings.

In *Eagle-Picher M. & S. Co. v. Workmen's Compensation Comm.*, 147 Kan. 456, 458, 76 P. 2d 808, we refused in a mandamus proceeding to compel the commissioner to include in the record for appeal to the district court certain affidavits filed after the hearing before the commissioner had been closed. The decision was based upon the proposition that the statute prescribed what the record should contain and nothing in addition thereto can be included.

In *Souder v. Rine Drilling Co.*, 150 Kan. 239, 92 P. 2d 74, the district court rendered judgment on November 30, 1938, setting aside an award, made upon review by the commissioner, on the ground that the application for review had not been filed in time. On De-

cember 3, 1938, the claimant filed a motion for a "new trial" which motion was overruled on January 14, 1939. No appeal was taken from the judgment of November 30, 1938, but the claimant attempted to appeal from the order of January 14, 1939, overruling the "motion for a new trial." It was held that post-judgment motions are not provided for in compensation procedure and that such motions cannot extend the time within which appeals must be taken.

In *Employers' Liability Assurance Corp. v. Matlock*, 151 Kan. 293, 98 P. 2d 456, the question as to the scope of the act and procedure to be followed was again carefully examined. Again it was held that the act "establishes a procedure of its own, and that the procedure furnishes a remedy which is substantial, complete and exclusive in compensation cases." (pp. 298, 299, and cases cited.)

In *Taylor v. Taylor*, 156 Kan. 763, 137 P. 2d 147, it was held that an appeal to the district court could not be taken on limited issues, there being no provision in the compensation act for doing that. The district court must review the entire record as presented by the transcript of proceedings before the commissioner.

The issue decided in *Walz v. Missouri Pac. Rld. Co.*, supra, is directly in point. After approving and filing an award the commissioner made an order setting it aside and directing a rehearing. The order was held to be void. In the opinion it was said:

"What the commissioner has done—speaking in terms of civil procedure—was to review a judgment, set it aside, and grant a new trial. The legislature was perfectly familiar with that kind of procedure when it framed the compensation act. The civil code contains an entire article relating to new trials and proceedings to revise judgments, and when the compensation act was framed everything squinting in that direction was left out. The commissioner was given power to approve or disapprove the examiner's award. Beyond that the purpose manifestly was to avoid the confusion, uncertainty, delay and expense necessarily attending a practice looking to the reopening of closed cases." (p. 204.)

(See; also, *Hearst v. Independent Construction Co.*, 136 Kan. 583, 16 P. 2d 540; *Orendoc v. Kaw Steel Construction Co.*, 131 Kan. 366, 291 Pac. 952; *Cruse v. Chicago, R. I. & P. Rly. Co.*, 138 Kan. 117, 23 P. 2d 471; *Woods v. Jacob Dold Packing Co.*, 141 Kan. 363, 365, 41 P. 2d 748; *Brower v. Sedgwick County Comm'rs*, 142 Kan. 7, 45 P. 2d 864.)

The construction of the compensation act, firmly established in this unbroken line of decisions, leaves no ground, in the view of a

majority of this court, upon which to support the district court's order vacating the award of July 31 and making a new award. The appeal statute (G. S. 1935, 44-556) simply provides that when the required notice of appeal has been filed with the clerk of the district court the clerk "shall docket said cause for hearing as in other cases on appeal" and that the court "shall have jurisdiction to grant or refuse compensation, or to increase or diminish any award of the commissioner as justice may require." There is no provision in the act for motions for a new trial or for other post-trial motions. There is no provision for modification of an award once made by the district court except as found in section 44-528 which provides for review, under certain conditions, by the commissioner at any time before, but not after, final payment. When an award has been made by the district court the only recourse for aggrieved parties—aside from such relief as may be afforded by 44-528—is by appeal to this court upon issues of law only. To permit the district court, either upon motion of parties or upon its own motion, to reopen a case and vacate or modify an award which it has made would open the way to delays in compensation cases —one of the very results which the legislature sought to prevent. If appellee's contention is good, then on the 19th day after it has made an award the district court could set it aside and make a new award and on the 19th day thereafter it could again vacate or modify the award—and so on in this manner indefinitely. The fact that such a course may be unlikely does not affect the legal aspect of the question. If the court has power once to vacate its award, it has power to continue to vacate or modify as it sees fit. And if such power is to be recognized, in the absence of any provision for it in the act, where is the line to be drawn? What limits would remain on the power of a district court to supplement, in other particulars, the prescribed procedure?

The act does not put upon the district court any pressure of undue haste in considering these appeals. The court has ample time for full and careful consideration of the record before making its decisions. The act merely provides that appeals in compensation cases shall have precedence over "other hearings except those of like character, and shall be heard not later than the first term of said court after the appeal has been perfected" (G. S. 1935, 44-556).

A very practical consideration also supports the established rule that the act is exclusive and cannot be supplemented by borrowing

from the code of civil procedure. If it be held that the district court has power to vacate or modify awards once formally made the parties and their counsel could not rely upon the action taken, but would be required to keep constantly on the alert until the expiration of the statutory appeal period of twenty days in order to be sure no modification of the award had been made. If the legislature had intended such a contingency it would have provided for it in the law.

In view of the conclusion that the order of August 14, 1945, modifying the award was void it is not necessary to consider appellants' contention that the finding of ten percent permanent disability was not supported by substantial evidence.

There remains for brief comment the "cross-appeal" of the claimant from the award of July 31. The appeal is not in fact a "cross-appeal" at all, but rather an appeal. Obviously, the "awards" of July 31 and August 14 cannot both be valid. Appellants object to consideration of the "cross-appeal" for reasons which need not be discussed. We think it can properly be treated simply as an appeal from the award of July 31. Treated as such, however, the claimant makes no suggestion as to what we can do about it on this record. The only part of the award of which he complains is the *failure* to make a finding of ten percent partial permanent disability. In the first place, our jurisdiction being limited to questions of law we are without power to direct what finding the district court should make on a disputed question of fact. In the second place, the record clearly discloses a conflict of testimony as to whether the claimant suffered any permanent disability which resulted from the accident. In its award of July 31 the district court found that the record did not justify the claimant's contention in that regard. There being substantial testimony to support that finding we cannot disturb it.

The judgment is reversed with directions to vacate the order and award of August 14, 1945, modifying the award of July 31, 1945.

WEDELL, J. (concurring): I concur substantially with what is said in the majority opinion. In addition to what is therein said my views may be briefly stated. It seems to me the only problem presented is to ascertain the legislative intent with respect to the procedure under the workmen's compensation act. Having done that we have no alternative except to follow it. To permit the filing of postjudgment motions in compensation cases and to permit the

incident delays which normally follow such motions is to permit precisely what the legislature insisted on avoiding. It seems to me that conclusion is inescapable. The legislature knew all about the delays occasioned by such motions under the civil code procedure and it determined not to permit that or a similar procedure in compensation cases. It therefore provided a simple, direct and speedy procedure which required appeals to be taken in twenty days. The purpose of the procedure was to make certain the workman would obtain quickly such compensation as he was entitled to receive, if any.

It was solely within the province of the legislature to determine the matter of procedure. It is not our function to determine whether it acted wisely or unwisely. We repeatedly have said the procedure provided by the act being complete, explicit and exclusive permits us to add nothing to it. Consequently we have no right to circumvent the legislative intent by a decision which inevitably will substitute a procedure the legislature did not want. I know of no inherent power that courts possess to undo the legislative will when its will is not contrary to law.

In my opinion the fundamental issue here presented is not met by admitting that a motion for modification or reversal of a judgment in a compensation case has no sanction in the law but that a district court may nevertheless entertain such a motion, have a hearing thereon, and modify or set aside its judgment on the theory it has inherent power to do so without such motion. The plain fact is the judgment was modified pursuant to the postjudgment motion. No one contends otherwise. It cannot seriously be doubted that if the minority view should be sustained postjudgment motions could easily, and probably would, become the regular practice and procedure in compensation cases. Of course, it always would be admitted such motions were wholly unauthorized by the act, but it would be contended they were permissible on the theory the court had a right to exercise its discretion in determining whether it would permit them to be filed, whether it would grant a hearing thereon and whether it would act upon them. This would bring into the appeal procedure an entirely new, an unauthorized and an undesired issue, namely, whether the district court abused sound judicial discretion in permitting or refusing such motions to be filed or in hearing or refusing to hear the same. The legislature eliminated all such

possible issues by deliberately refusing to provide a procedure under which such issues could arise.

It is not my purpose to labor the point. One other matter, however, readily suggests itself to which I shall merely direct attention. We frequently have appeals in the same compensation case by the employee, employer and the insurance carrier. One party may appeal from one portion of the judgment and others may appeal from entirely different portions thereof. If one party may file a post-judgment motion to modify or set aside a portion or portions of the judgment from which he intends to appeal, all parties, of course, may do so and at different times. If new judgments are rendered in response to hearings on such motions, or on some of them, appeals ultimately may be perfected much later than twenty days from the date of the original judgment. Not only will delays be occasioned by the substituted procedure, but confusion and legal complications relative to the finality of the various judgments, and the time for appeal from each of them, inevitably will creep into the procedure which the legislature intended should be kept as simple and direct as it had provided.

Burch, J. (concurring): I concur with the statements made in the majority opinion and in the concurring opinion by Mr. Justice Wedell. In addition thereto the following observations possibly should be made: There is nothing startling or new about the possible inequitable impositions upon courts and rights of litigants conjectured in the dissenting opinion arising by reason of a mistake which might be made by a court or a clerk in connection with a final order. Such a possibility of a mistake confronts every district court at the close of every term of court. The rule proposed in the minority opinion would not necessarily be helpful or adequate. To illustrate —if a district court should enter a final order on the last day of the term, it could not be set aside thereafter unless the change could be effected by a *nunc pro tunc* order or by compliance with one or more of our statutes pertaining to post-term procedure. In such an instance, the twenty-day period provided for appeal and advocated in the minority opinion as a period within which the district court could exercise inherent powers, would not be effective because of the term expiration. As a further consequence, we would be injecting into the compensation act all of the applicable provisions of the general code relative to post-term motions, provided applications therefor and rulings on the same were made within the suggested

twenty-day period. This court has consistently refused to do so because of the well- and repeatedly considered rule to the effect that the compensation act is special legislation, complete in itself, and always should be so construed whenever it is possible to do so, in furtherance of justice. Evidently the legislature has approved of such construction and has relied upon it.

In December of 1931 this court held:

"That court [the district] considers and passes upon both the law and the facts and makes its findings and conclusions and judgment. Unless appealed from, and subjected to a review provided by section 28 of the act, it is the *final determination* of the controversy." (Emphasis supplied.) (*Lenon v. Standard Oil Co.*, 134 Kan. 289, 292, 5 P. 2d 853.)

Since such date the legislature has amended the compensation act many times and has not seen fit to change or modify the effect of such holding by this court in any manner whatsoever. In July, 1939, this court held:

"The rules of the civil code are not applicable to compensation proceedings. [citing cases.] . . . .

"Post-judgment motions are not provided for in compensation procedure, and such motions cannot extend the time within which appeals must be perfected." (*Souden v. Rine Drilling Co.*, 150 Kan. 239, 241, 92 P. 2d 74.)

Since such date the legislature has met several times and has not seen fit to reject or modify in any manner the construction given to the act by this court, although the legislature has amended the compensation act in other particulars since 1939. Such act was amended by the legislature in 1941, in 1943 and again in 1945, but no change was made by the legislature indicating an intent on its part to modify in any manner our decisions to the effect that the compensation act is a simplified procedure, complete within itself, and that the rules of the civil code are not applicable to compensation proceedings, and it has not rejected the effect of the decisions herein cited. As a consequencce, terms of district courts have nothing to do with the compensation act with the sole exception that the legislature has provided that on appeal from an award of the commissioner the district court must hear the case not later than the first term of said court after the appeal has been perfected. (See G. S. 1935, 44-556.) The inherent powers of courts within a term, therefore, are not within the question here presented. It appears rather conclusively that the legislature has seen fit to follow the construction which this court has given to the act and to the particular provision involved in the instant case by not enacting any

legislation showing a contrary intent. In such circumstances, this court is not warranted in creating new rules of procedure pertaining to special legislation based upon the doctrine of inherent powers of the court. Especially is such true when the effect thereof would be to prolong and extend the litigation in compensation cases. If the legislature desires to enlarge upon the powers of district courts in the administration of the compensation act it can do so, but we are not justified in so doing in view of our decisions upon which the legislature probably has relied.

Hoch, J. (dissenting): Although it fell to my lot to write the opinion for the court in this case I cannot concur. In my opinion the decision gives an unsound construction to the workmen's compensation act and one which is not required by any of the decisions cited in its support. The result portends grave injustice to both employers and employees.

The decision is predicated upon our repeated holding that the workmen's compensation act is complete in itself and that the procedure to be followed is to be found in the act and is not to be supplemented by borrowing rules from the code of civil procedure. I have no disagreement with that rule nor with any of the cases cited in its support. But neither the rule nor the cited cases determine the issue here.

In order to uphold the power of the district court to modify its award, within twenty days and within the term, it is not necessary to go outside the act. And no borrowing of rules of procedure is involved. The question here relates to the *inherent powers* of the court in discharging the duties imposed upon it under the act.

The real import of the instant decision is that in hearing and determining appeals under the compensation act a district court has no inherent power at all as a court. I have examined every decision of this court which appeared to have any bearing upon this question and have found no declaration which supports that view. Certainly there is no specific provision to that effect in the act. On the contrary, the act, in my opinion, recognizes such inherent power, by necessary implication.

To clarify the issue, let us first restate the facts, briefly. In doing so we need not refer to the matter of temporary total disability or to the allowance for medical and hospital expenses. Those items were the same in all awards of both commissioner and court, and are not now in controversy. We are concerned only with the ques-

tion of partial permanent disability. The commissioner found that the claimant had suffered a ten percent partial permanent disability as a result of the accident. On appeal the district court made an award on July 31, 1945, in which the claim as to permanent disability was rejected. The court stated that it felt the claim had not been established. Under the statute the claimant had twenty days in which to appeal, upon questions of law. A few days after the court had entered its award the claimant filed a "motion" asking the court to reconsider and modify the award. On the 14th day after the award was made—or to put it otherwise, six days before the time for taking an appeal to this court had expired— the district court entered its order of August 14, 1945, modifying the award of July 31. In doing so the court stated that it had concluded that it had been "in error in finding from the evidence that the claimant was not entitled to an award of permanent partial disability following his period of temporary total disability." The former award was then modified to conform to the one which had· been made by the commissioner. Although the district court's order so modifying its award was made within the term and well within the appeal period of twenty days, this court now holds the order void.

At this point let me make it clear that I fully agree that there is no provision in the act for motions for a new trial or for other post-trial motions. The claimant's "motion" to modify could not extend the time for taking appeal from the award of July 31, 1945. I do not regard the "motion" as having any legal, any procedural effect whatever. It amounted simply to a request directed to the court's discretion in the exercise of an inherent power which the court had, motion or no motion.

The compensation act provides that appeals may be taken "to the *district court* of the county where the cause of action arose upon questions of law and fact as presented and shown by a transcript of the evidence and the proceedings as presented, had and introduced before the commission." On such appeal "the district court shall have jurisdiction to grant or refuse compensation, or to increase or diminish any award of the commission *as justice. may require.*" (Italics supplied.) As far as is here pertinent, that is all.

Now what is this "district court" to which appeals may be taken? The compensation act does not tell us. Is it some mythical tribunal, undefined, unidentified? Certainly not. It is an established,

living institution. It has a presiding judge elected or chosen pro tem as provided by law, it has a clerk to keep the record of its acts, a reporter to record its proceedings, a sheriff to serve its processes, a bailiff to preserve order. And yet the compensation act tells none of this, or of any other functions essential to the vitality of the "district court" as a tribunal to which appeals may be taken.

That district courts, as other courts of general jurisdiction, have certain *inherent powers*, independent of statute, is too well established to require any lengthy discussion. (14 Am. Jur. 370 § 171; 21 C. J. S., p. 41, § 31, p. 136 note 17, p. 148 notes 26, 27; 21 Words and Phrases, p. 363; *Karr v. Moffett*, 105 Kan. 692, 185 Pac. 890; *State v. Superior Court*, 39 Ariz. 242, 5 P. 2d 192, 194; *State, ex rel. Gentry v. Becker*, 351 Mo. 769, 174 S. W. 2d 181; 3d Dec. Dig. Judgments, Key No. 341.) For instance, can it be doubted that the district court has inherent power to preserve order and decent behavior while hearing an appeal in a workmen's compensation case? The act does not so provide, but certainly such power exists independent of statute (21 C. J. S. 139). Or suppose one of the attorneys who has been permitted to take the transcript from the clerk's office for the purpose of study refuses to deliver it in court at an appointed time? . Will anyone contend that the court would not have power to issue process to require its delivery or to punish for contempt? Even aside from the specific provision therefor in the statute (G. S. 1935, 20-302) a district court has inherent power to punish for contempt (*In re Millington*, 24 Kan. 214). The district court's inherent power to prevent abuse of its process (*Patterson v. Glass Co.*, 91 Kan. 201, 208, 137 Pac. 955) certainly would not be denied simply because the case at hand was under the workmen's compensation act. Surely the "district court" to which compensation appeals may be taken is not a naked tribunal, stripped, in this isolated instance, of all inherent powers.

Included in the inherent powers of the district court is the control of its own judgments, during the term—or as it has frequently been said, the judgment of the court is "within the bosom of the court" during the term in which it is entered. That principle is so well established that there is really no need to cite authorities in its support. "The procedure for vacating judgments during term is not controlled by statute, but is an inherent power within the court." (*Mosher v. Mutual Home & Savings Ass'n,* [Ohio App.], 41 N. E. 2d 871, 874.) This rule has been repeatedly and consist-

ently followed by this court. (*Cornell University v. Parkinson,* 59 Kan. 365, 371, 53 Pac. 138; *Sylvester v. Riebolt,* 100 Kan. 245, 166 Pac. 510; *J. B. Colt Co. v. Clark,* 125 Kan. 722, syl. ¶ 2, 266 Pac. 41; *Rasing v. Healzer,* 157 Kan. 516, 142 P. 2d 832.)

Let me again make clear that I am not contending that the district court may exercise inherent power in contravention of any provisions of the compensation act. The act provides that appeals can only be taken within twenty days after the award is made. And it may well be argued that under our decisions the court's power to control its judgment within the term can only be exercised within that twenty-day period. We have said that when the twenty days have expired, without appeal, the award has become final. In *Dobson v. Apex Coal Co.,* 150 Kan. 80, 91 P. 2d 5, it was said that *since no appeal had been taken* the award of the commissioner had become final. In *Lenon v. Standard Oil Co.,* 134 Kan. 289, 292, 5 P. 2d 853, it was said concerning an award by the district court: "*Unless appealed from,* and subjected to a review provided by section 28 of the act, it is the final determination of the controversy." (Italics supplied.) I see no reason to hold that within the term, and within the twenty days provided for taking appeals, the award, like any other judgment, is not "within the bosom of the court."

If the court's reasoning in this case is sound then it would apply with equal force to all awards however mistakenly made by the court, contrary to its real intention, since there is no provision in the act for *nunc pro tunc* orders, and any finding made by mistake, with conflict of evidence on issues of fact would be irrevocable. For illustration, suppose a compensation appeal is submitted without argument by counsel and through mistake of the clerk or otherwise the court, in reading the transcript, fails to see some part of a large record. An award is announced and the next day the mistake is discovered. Upon examination of the additional evidence the court concludes that its finding was wrong, on a controverted and vital issue of fact. We are here saying that there would be no way to correct the award thus mistakenly entered. Admittedly, the situation posed as illustration is not likely to occur since the court would probably discover the omission by examination of the index or by noting the skip in the page numbering. But it might happen. At any rate many other situations, including those arising from purely clerical errors, which may easily occur, can readily be imagined. Appeal to this court would be of no avail if the record disclosed

substantial evidence to support the award—no matter how contrary it was to the real judgment and intention of the trial court. Certainly the act does not require a result so illogical and so subversive of the purposes of the act.

The result in the instant case illustrates the injustice of the rule. It was the final judgment of the district court, as it had been of the commissioner, that the claimant suffered a ten percent partial permanent disability as a result of the accident. For the sufficient reason stated in the court's opinion, it was not necessary to consider the question of whether there was evidence to support such an award. But I have no hesitancy in saying that while there was a conflict of testimony on the point there was ample evidence to support the award as to partial permanent disability. In the oral argument counsel for the respondent did not seriously contend otherwise. And yet there is nothing the claimant can now do about it. I agree with the court's opinion that no relief is possible under the "cross-appeal." And no modification of the award of July 31 may be sought under G. S. 1935, 44-528, because final payment under that award had long before been made, and because of other facts which make that section inapplicable.

I am not impressed by the view that it would open the way for endless delays if we were to uphold the award of August 14. It would do nothing but make possible a modification of an award, within the term and within the twenty days. And the suggestion that a district court might continue to delay a compensation case by repeated modification every nineteen or twenty days seems quite unrealistic. In the first place there would be no need to resort to such a device if the court had a deliberate purpose of delay. While the statute provides for early hearing it does not provide when the decision shall be made. Delay could be accomplished by the more simple means of delaying the decision in the first instance. In any event, there are ample remedies for capricious action, for abuse of power.

It is also suggested in the opinion that if courts are permitted to modify an award once made, even if only within the term and within the twenty days the parties and their counsel would be required to be on the alert for such possible modification. What is novel about that? A similar necessity exists under countless situations in civil cases generally. And of course no one is suggesting that parties

would not be entitled to notice of modification made or would not have twenty days in which to appeal from such new award.

Attention is called in the opinion to *Walz v. Missouri Pac. Rld. Co.*, 130 Kan. 203, 285 Pac. 595, in which it was held that since there was no provision for doing so in the compensation act the commissioner had no power to set aside an award which he had made and grant a rehearing. The contention is that the same reasoning would preclude the *court* from modifying its award. I do not agree. The office of commissioner is one created solely by the act. His powers are those which the act gives him. *District courts,* on the other hand, were not created by the compensation act. They were living institutions whose services were invoked by the act. They bring to the performance of their duties under the act their inherent powers, except as such powers are limited or circumscribed by provisions of the act. And on the practical side the distinction on this point between the commissioner and the court is equally obvious. If the commissioner errs in an award on vital issues of fact appeal to the district court is open to either side. But under the instant decision if the district court decides that it has erred in its findings of fact there is then no recourse if the erroneous finding is supported by evidence.

This expression of views might well close here, being based squarely upon the *inherent power* of the court. But it is pertinent to add that even upon the basis of the statute itself our decisions are not wholly harmonious with the instant decision. For instance, although the act provides specific methods for enforcing an award (G. S. 1935, 44-529, 44-563) it was held in *Lenon v. Standard Oil Co.*, supra, that an award may be enforced the same as any other judgment, under the code of civil procedure. Again, in *Employers' Liability Assurance Corp. v. Matlock,* 151 Kan. 293, 98 P. 2d 456, it was held that although the act does not specifically give authority to the commissioner to determine equitable defenses in enforcing insurance policies, such jurisdiction in equity is incidental to the general jurisdiction conferred upon him. With these decisions I am in agreement. They are in harmony with our repeated declarations that the act is to be liberally construed to carry out its purposes.

The judgment of the trial court should be affirmed.

SMITH and PARKER, JJ., join in the foregoing dissenting opinion.