No. 45,469

LEO NORCROSS, *Appellant*, v. PICKRELL DRILLING COMPANY, and FIDELITY AND CASUALTY COMPANY, *Appellees*.

(449 P. 2d 569)

Opinion filed January 25, 1969.

*J. Eugene Balloun*, of Great Bend, argued the cause, and *Lee Turner* and *Max E. Eberhart*, both of Great Bend, were with him on the brief for appellant.

*Jerry M. Ward*, of Great Bend, argued the cause, and *Tudor W. Hampton*, *Norman G. Bailey* and *Thomas J. Berscheidt*, all of Great Bend, were with him on the brief for appellees.

The opinion of the court was delivered by

FROMME, J.: Leo Norcross, claimant, appeals from an award by the district court under the workmen's compensation act. The principal question is whether the district court had the authority to amend a previous judgment and award.

A brief recital of the facts will present the issues. The claimant was injured on November 9, 1963, while employed by Pickrell Drilling Company, respondent, as an oilfield roughneck. The claimant was struck on the forehead while attempting to crank an engine and received a cut which required several stitches to close. He was not hospitalized. The day following the accident he began com-

plaining of headaches. Other psychopathic symptoms developed. His condition was diagnosed as an anxiety neurosis secondary to the physical injury.

The examiner found claimant suffered a four percent (4%) permanent partial disability to the body as a whole. He determined there were 94 weeks of permanent partial disability due the claimant as of September 13, 1965, and 321 weekly payments remaining to be paid at the rate of $3.13 per week. The disability was found to have commenced at the time of the accident. This award was approved by the director and the claimant appealed to the district court.

The district court heard the appeal and determined claimant was twenty percent (20%) temporarily partially disabled. The court did not specify the date that such disability commenced or the date from which payments should be figured. This first judgment and award was dated February 17, 1967. The award provided for 415 weekly payments.

The respondents previously had filed a motion asking the court to postpone entry of this judgment. The judgment and award was journalized and filed without hearing the respondents' motion. The journal entry was signed by the judge and by claimant's attorney. It contained a notation by the attorney for respondents to the effect they were unable to approve the same because the court's memorandum on which the journal entry was based failed to specify the date the disability commenced.

Before the motion was heard the claimant made demand for compensation under K. S. A. 44-512a and compensation was paid by respondents for the period of November 16, 1963, to August 5, 1967. This payment was made by respondents on August 11, 1967.

The motion was set down for argument and the district court entered a second judgment and award dated September 7, 1967. This judgment will be covered in detail later but its effect was to allow disability commencing September 1, 1965. The date of disability was set by this judgment almost two years after the accident occurred.

The claimant-appellant attacks this later judgment and award. He bases his attack upon the rule that post-trial motions are not authorized in workmen's compensation proceedings and a trial court cannot amend its judgment and change an award once it is entered.

The respondent-appellees counter by pointing out the trial court has a duty to make the record of a judgment speak the truth and

the later judgment was entered *nunc pro tunc.* The court merely supplied a date overlooked in the first judgment and award.

In *Gray v. Hercules Powder Co.,* 160 Kan. 767, 165 P. 2d 447, this court held:

"The workmen's compensation act is complete in itself, providing its own procedure, and may not be supplemented by borrowing rules from the code of civil procedure. ( Syl. ¶ 1.)

"There is no provision in the workmen's compensation act for motions for a new trial or for other post-judgment motions. ( Syl. ¶ 2.)

"An award which has been formally made and entered by the district court in a workmen's compensation case may not thereafter be modified by such court, such judgment being final, subject only to such modification as may be made by the commissioner under section 44-528 or by this court upon appeal under G. S. 1935, 44-556. ( Syl. ¶ 3.)"

These principles enunciated in *Gray* have been approved and applied in later cases. See *Bushman Construction Co. v. Schumacher,* 187 Kan. 359, 362, 356 P. 2d 869.

However, it is true that a judgment as entered is one thing and the judgment as recorded may be quite a different thing. Because of error the record of the judgment may not be correct. In such case a trial court not only has the right but the duty to make the record speak the truth. This duty of the court is inherent and does not depend upon rules of procedure or lack of them. See *Tafarella v. Hand,* 185 Kan. 613, 347 P. 2d 356, and cases cited p. 617 of the opinion.

The change in the record to make it speak the truth may be accomplished by an order *nunc pro tunc.* The function of such an order is to correct the record of a judgment by entering, now for then, an order previously made. It cannot be used to alter a judgment actually rendered. See *Hoard v. Shelton,* 201 Kan. 145, 439 P. 2d 123, and cases cited at p. 153 of the opinion.

In the present case the trial court filed a written memorandum on which the judgment dated February 17, 1967, was based. The findings which relate to the duration of the disability therein are as follows:

"1. The claimant met with personal injury by accident in Hodgeman County, Kansas, on or about November 9, 1963, which arose out of and in the course of the claimant's employment by the respondent.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"5. The claimant is presently suffering from an anxiety neurosis. It is probably temporary rather than permanent in nature. By reason of said anxiety neurosis, the claimant suffers some partial functional impairment of the body

which in turn is disabling and keeps the claimant from working as well as he was able in the past prior to his accidental injury. There is a causal connection between said accidental injury and the condition of anxiety neurosis he was found to be in at times when Dr. Riordan examined him. . . . (February 25, 1964, and October 11, 1965.)

"6. By the very nature of things, the question of the extent of disability is often times conjectural. Human nature being what it is, and medical science not being perfect, makes any decision by a trial court in matters of this kind, extremely difficult. The dilemma in this kind of case is similar to the dilemma courts have in considering the divergent medical views in heart cases. This Court, as in most cases, is not required to confine its consideration of a workman's injury to the testimony of expert medical witnesses, and it is not essential that the disability or incapacity, or its extent or probable duration, be established by medical testimony. As the examiner pointed out in his award the testimony of the claimant alone was sufficient to support a finding of disability in *Oliver v. Christopher*, 98 Kan. 660. *Likewise the duration of claimant's disability need not be shown by medical evidence, and the testimony of lay witnesses, indeed, even that of the claimant, is considered of prime importance, as shown by the cases. . . . (citing cases). The testimony of the medical witnesses in this case, which standing alone is inclusive (sic), requires the consideration of other testimony as well. Therefore, this Court considered not only the lay testimony of the claimant in this regard, but also the testimony of Mrs. Wetig, his landlady, who saw and observed him frequently and noted a significant change in his behavior following his November 9, 1963 injury by accident.* (Our emphasis.)

. . . . . . . . . . . . . .

"8. This Court concludes that the claimant is temporarily partially disabled to the extent of 20%; that he should be afforded additional medical and psychiatric care and treatment at the expense of the respondent and the insurance carrier."

The first judgement awarded compensation to claimant for 415 weeks of twenty percent (20%) temporary partial disability at the rate of $15.65 per week, or until further order of the director.

The second judgement and award, dated September 7, 1967, was based upon a second written memorandum by the trial court. It reads as follows:

"This Court upon reviewing the files of the above entitled matter finds it filed a Memorandum with the Clerk of the District Court on June 29, 1967, In this Memorandum it failed to specifically set forth the dates as to when the claimant's temporary disability started.

"This Court further finds that the Respondent filed a Motion for the postponement of the entry of Judgement in this case until further argument was had. Through the Court's own oversight and neglect the Journal Entry was signed and filed with the Clerk of the District Court on August 15, 1967, notwithstanding a notation on said Journal Entry that Counsel for the Respondent had a motion pending before the Court.

"On September 7, 1967, Counsel for the Respondent presented its motion and thereafter the Court retrieved the files from Hodgeman County, examined the files, and reviewed the proceedings. After full consideration was given to arguments of Counsel and the facts as disclosed by the files, this Court finds its original Memorandum is in part incorrect and should be corrected to speak the truth; that it has the power to reopen this case because this court did not take into consideration the Motion of the Respondent that was pending before it in this particular matter; that its original order was incomplete, and through its own fault . . . failed to advise Counsel of its finding as to when the temporary partial disability of the claimant started; that the Memorandum should have, and it was intended by the court that it did have, a date when the temporary partial disability of the claimant was to commence.

"A review of the files discloses no evidence when the claimant first asked for treatment but during argument Counsel advised that it took place in May 1966, approximately two and a half years after date of accident (November 9, 1963). Shortly after the claimant was injured he was examined by Dr. Hiebert for possible plastic surgery and this might have been the first indication of the traumatic neurosis which claimant has suffered. Claimant said he started having his headaches around the first of December 1963, and it was then he first went to see his attorneys because he had 'seen a few of these accidents where the guys wouldn't do anything, and later ended up crippled the rest of their lives'. The claimant had not seen a doctor for his headaches when he was examined by the Examiner on July 8, 1964. He again testified on May 6, 1966, and stated he was hesitant to testify concerning his employment since his accident because he might lose his job with the company if the insurance company learned for whom he worked. The claimant indicated he had a fear that the insurance company would tell his employer to terminate his employment, and reasoned that his employment had been terminated on occasions for that reason. It matters not whether there was any basis in fact to cause this fear. He testified he lost his job after he testified the first time. The testimony indicates that he did have some fear if he disclosed for whom he worked, and that upon disclosure, his employment would soon be terminated.

"Although he did not work for several months after the accident the evidence indicates he worked rather steadily after the accident. During this period of time he consumed many aspirin to relieve his headaches and pain. The Memorandum this Court filed made a finding that the claimant was suffering from an anxiety neurosis. It is difficult to determine when the anxiety neurosis became so severe as to require medical attention and treatment. The illness obviously was present and existed when he first asked for treatment in May 1966. It is easy to be arbitrary and say the illness existed from the date of the accident or that it started when he first asked treatment but neither is entirely correct. The Court would be more inclined to believe that it started to manifest itself during the year 1965. The Court has attempted to completely reread all of Mr. Norcross's testimony and it is hard from a time standpoint for it to tie itself to any specific statement he made. He disclosed how he regularly took five or six aspirin at one time; became irritable and would fly off the handle; that he did not like to fish any more or watch television; but he did not really state when this illness started.

"The testimony of Amelia Wetig indicates she knew when he had the accident and that he complained about headaches about twice a week. Mrs. Wetig's testimony seems to indicate his trouble started after the accident. All this time, however, he apparently worked steadily for several employers and was able to earn an adequate living doing the same kind of work he had previously done and was doing at the time of his accident.

"The accident took place in November 1963.

"He asked for treatment May 1966.

"Sometime during 1965 the illness of the claimant became severe enough to render him temporarily partially disabled. In this Court's opinion, considering all of the evidence, and nothing specifically, it started to increase in intensity during the summer months of 1965, and became severe enough to render him partially disabled and in need of treatment about the month of September 1965.

"Therefore, this Court amends its original Memorandum to show that the temporary partial disability of the claimant commenced September 1, 1965, and the award made by this Court should be computed from that date."

The second journal entry is not limited to correcting the record of a judgment previously rendered. The action taken by the court, as outlined in the memorandum, was to review and re-examine the evidence bearing upon the duration of the disability. It is apparent a different conclusion was reached after the later evaluation of the evidence.

For instance, in the first memorandum the court stressed the testimony of the claimant and of Mrs. Wetig, his landlady. The court pointed out that the testimony of claimant alone may be sufficient to support disability and that the duration of disability does not have to be shown by medical evidence. (See finding No. 6.)

The testimony of claimant and his landlady did support the finding the disability commenced immediately after the accident.

In the second memorandum the testimony of claimant and his landlady received passing comment by the court. More weight was given to the dates of treatment and the testimony of medical witnesses. The court referred to its action as amending the previous memorandum and judgment. This re-evaluation of the evidence was not for the purpose of determining the nature of the judgment previously rendered. It was to determine what judgment should have been rendered on February 17, 1967.

The respondent-appellees further contend the district court is not limited to entering an order *nunc pro tunc*. Based upon *Fisher v. Rhoades Construction Co.*, which first appeared in 188 Kan. 792, 365 P. 2d 1101, and later in 190 Kan. 448, 375 P. 2d 771, they say a district court may make its findings more clear and specific and change the amount of the award in workmen's compensation cases.

Examination of the *Fisher* cases will indicate they deal with the authority of a district court to reconsider its findings and award after remand. In such case the district court is authorized and limited by the directions given by this court in the opinion and mandate. The *Fisher* cases do not purport to modify the rules laid down in *Gray v. Hercules Powder Co.,* supra. The *Gray* case is clearly distinguished in the *Fisher* cases.

An additional reason appears why we do not consider the second journal entry an order *nunc pro tunc.* The total amount of the award under the first judgment was reduced in the second journal entry.

The first award provided 415 weeks of compensation. Both parties considered the disability in the first award to have commenced at the time of the physical injury. Payments were made in response to the 512a demand from November 16, 1963.

In *Magers v. Martin Marietta Corporation,* 193 Kan. 137, 392 P. 2d 148, it was held that under the workmen's compensation act weekly payments for disability cannot extend beyond *eight years from the date of the injury.* Under the first journal entry 415 weekly payments could have been made if commenced November 16, 1963. (One week after the accident.)

Under the later journal entry payments were to commence September 1, 1965. The number of payments was deleted in this journal entry and the payments were to be made "as provided by law, or until further order of the Director." It is apparent the effect of the second journal entry was to reduce the number of weekly payments possible under the eight year limitation. Only 327 weekly payments were possible if payments were to commence September 1, 1965.

The second journal entry was not an order *nunc pro tunc.* The award dated February 17, 1967, was formally made and entered. It became final and could not be modified thereafter by the district court.

The judgment is reversed with directions to vacate the order and award dated September 7, 1967, and reinstate the order and award dated February 17, 1967, which order and award must be interpreted as having determined the disability commenced on the date of the accident.