ISAACSON STRUCTURAL STEEL COM-
PANY, A DIVISION OF ISAACSON
CORPORATION, Appellant,

v.

ARMCO STEEL CORPORATION,
Appellee.

No. 5510.

Supreme Court of Alaska.

Feb. 11, 1982.

Phyllis C. Johnson, Atkinson, Conway,
Bell & Gagnon, Anchorage, for appellant.

Carl J. D. Bauman, Joseph R. D. Loesch-
er, Hughes, Thorsness, Gantz, Powell &
Brundin, Anchorage, for appellee.

OPINION

Before RABINOWITZ, C. J., and CON-
NOR, BURKE, MATTHEWS and COMP-
TON, JJ.

RABINOWITZ, Chief Justice.

This litigation arose out of a contract dispute between Isaacson Structural Steel Company and Christianson Construction Company; Armco Steel Corporation became involved when Isaacson filed a third-party complaint against it. After a lengthy trial, the superior court entered judgment in favor of Isaacson in the third-party action. On appeal, however, we held that Armco was not liable to Isaacson, *Armco Steel Corp. v. Isaacson Structural Steel Co.*, 611 P.2d 507 (Alaska 1980), and after remand, judgment for Armco was entered. The superior court awarded Armco costs in the amount of $10,899.09 and attorney's fees. This appeal is taken from that award and pertains exclusively to liability for the expenses Armco has incurred in the course of this litigation.

Isaacson's claims in this appeal are based primarily on several procedural irregularities that occurred after the case was remanded. First, Armco filed its bill of costs and notice of taxation of costs, along with motions for attorney's fees and interest thereon, on June 16, 1980—prior to the entry of final judgment by the superior court. The clerk of court refused to conduct the hearing on costs required by Alaska R.Civ.P. 79 on the ground that the hearing could not be held until after entry of final judgment. When it was advised of the clerk's position, Armco filed alternative proposed final judgments,[1] both of which contained blank spaces for the amount of costs and attorney's fees to be awarded. On July 23, 1980, the superior court adopted one of the proposed judgments, and awarded Armco costs and attorney's fees simultaneously with its entry of final judgment. In addition, the superior court ordered that judgment be "entered *nunc pro tunc* to August 26, 1976," and awarded post-judgment interest on costs and attorney's fees from that date. This had the effect of treating the judgment entered in Armco's favor pursuant to this court's mandate as if it had been entered at the time of the initial judgment for Isaacson, and, accordingly, of treating the awards of costs and attorney's fees as if they had been entered at the time of the first judgment.

This sequence of events, according to Isaacson, deprived it of a hearing on the issue of costs and precluded it from raising objections to specific items that were taxed as costs. Isaacson also attacks the superior court's attempt to render the judgment on remand retroactive to the time of the original judgment.

I. *Did Armco's filing of its bill of costs prior to the entry of judgment violate Civil Rule 79? If Armco violated Civil Rule 79(a), did it thereby waive its rights to recover costs?*

Civil Rule 79(a) requires service of a bill of costs "[w]ithin 10 days after the entry of judgment."[2] Because Armco filed its costs bill a month before final judgment was entered, Isaacson argues it was in violation of the express requirement of Civil Rule

1. One of the proposed judgment forms stated that judgment was to be entered in Armco's favor on the third-party complaint; the other, which was adopted by the superior court, contained in addition the *nunc pro tunc* provision at issue on appeal.

2. Alaska R.Civ.P. 79(a) reads:

 *Cost Bill—Notice—Waiver.* Within 10 days after the entry of judgment, a party entitled to costs shall serve on each of the other parties to the action or proceeding a cost bill, together with a notice when application will be made to the clerk to tax costs. The cost bill shall distinctly set forth each item claimed in order that the nature of the charge can be readily understood. It shall be verified by the oath of the party, of his agent or attorney or the clerk of such attorney, stating that the items are correct, that the services have been actually and necessarily performed, and that the disbursements have been necessarily incurred in the action or proceeding. The notice shall specify the date and hour at which application for the taxing of such costs will be made to the clerk, which date shall be not less than 3 nor more than 7 days from the date of the notice. Failure of a party to serve a cost bill and notice as required by this subdivision shall be construed as a waiver of his right to recover costs.

79(a) that the cost bill be filed only after the entry of final judgment.[3]

We agree that Rule 79(a) requires cost bills to be filed after final judgment has been entered. First, we would have to torture the English language to construe Rule 79(a) as permitting earlier filing of cost bills. Second, by requiring cost bills to be filed after the entry of final judgment, Rule 79(a) promotes the efficient use of judicial resources and of attorneys' time. Often the full amount of costs for which a party seeks reimbursement will not be ascertainable until final judgment has been entered; for example, the full amount of Rule 82 attorneys' fees sought by a party will not be calculable until the entry of final judgment if an attorney must expend time on a case after trial, as when the attorney for the prevailing party is directed by the trial court to prepare findings of fact and conclusions of law. By requiring parties to wait until final judgment is entered before filing their cost bills, we thus avoid the necessity of amendments to cost bills to reflect post-trial expenditures and of holding supplemental cost hearings.

■ In *De Witt v. Liberty Leasing Company of Alaska*, 499 P.2d 599 (Alaska 1972), we discussed a party's failure to comply with Rule 79(a) and noted:

> Civil Rule 79(a) requires that the notice be filed '[w]ithin 10 days *after* the entry of judgment....' Appellant prematurely filed his notice of taxation after the trial court rendered its written opinion but prior to the entry of judgment.

*Id.* at 602 n.15 (emphasis in original). Although the court recognized that the pre-

maturely filed cost bill constituted a "technical noncompliance," we declined to require strict compliance with Rule 79(a) under the circumstances of that case. In our view the *De Witt* discussion clearly expresses our understanding that a cost bill filed before the entry of judgment is in violation of Rule 79(a).[4] Therefore, we conclude that Armco's premature filing of its cost bill violated the provision of Civil Rule 79(a).

We next turn to the question whether this violation constituted a waiver by Armco of its right to recover costs.[5] In our view this question is also resolved by *De Witt.*

■ In *De Witt*, the trial court stated in its written opinion that neither party was entitled to costs. Following entry of the written opinion, but prior to the entry of final judgment, the prevailing party filed his cost bill; on appeal it was argued that by filing his cost bill prematurely, the appellant had waived his right to costs. We stated:

> Although appellant did serve a cost bill and a notice which specified the time when application would be made to the clerk for taxation of costs, the notice failed to comply with the requirements of Rule 79(a) in several respects. We need not decide, however, whether these technical noncompliances would justify the harsh sanction of 'waiver.' The court in its written opinion found that appellant was not entitled to costs; by so doing, the court removed the determination from the province of the clerk. To require strict compliance with Rule 79(a) in these circumstances would be senseless formalism.

---

3. Isaacson's position is that this rule is derived from a statute in derogation of the common law, *see* AS 09.60.010, and consequently must be strictly construed. *See* 3 C. Sands, Sutherland Statutory Construction § 61.01 (1974). A strict construction of this provision, according to Isaacson, "clearly allows service of the cost bill and notice within ten days *after* entry of judgment, not before."

4. *See also* Rule 79(c)(2), which provides:
 Within 2 days after the costs have been taxed, the clerk shall insert the amount of the same in a blank space left in the judgment or order for that purpose, and shall make a

similar insertion in the copies and docket of the judgment or order.
 The fact that this rule requires the clerk to insert the amount of costs in blank spaces indicates that action by the clerk is appropriate only after the entry of judgment.

5. Isaacson insists that the provision that "[f]ailure of a party to serve a cost bill and notice as required by this subdivision shall be construed as a waiver of his right to recover costs," Alaska R.Civ.P. 79(a), must be read to preclude any award of costs to Armco.

499 P.2d at 602 (footnotes omitted). In the present case, likewise, the superior court removed the determination from the province of the clerk by deciding the costs issue. Because we see no dispositive distinction between the circumstances in *De Witt* and those of this case, we hold that strict enforcement of Rule 79(a) on the facts presented should be regarded as the same sort of "senseless formalism" that we previously refused to condone in *De Witt*. Therefore, we conclude that Armco did not waive its right to recover costs.

II. *Did the superior court err in awarding costs at the time judgment was entered?*

Isaacson's position is:

There was no valid cost bill and notice existing at the time the superior court made its award of costs. The court was without jurisdiction to enter such an award based on an invalid cost bill. The Rule places the jurisdiction to determine a cost award in the first instance in the clerk of court, with jurisdiction for review in the superior court on the same record used before the clerk.

Isaacson argues that the procedure followed by the superior court deprived it of the hearing on costs before the clerk of court that is mandated by Rule 79. The failure to conduct this hearing, according to Isaacson, deprived it of the opportunity to present evidence in opposition to Armco's bill of costs and to make "specific, line-by-line . . . objections" to various expenses claimed as costs.[6]

In this case, as in *De Witt*, the court removed the determination from the province of the clerk; it was the court's action, not Armco's, that prevented the clerk from holding a hearing. Our approval of such an action in *De Witt*, which necessarily had the effect of eliminating the hearing to which Isaacson claims it is entitled, is dispositive of the issue.[7]

◼ Nevertheless, there is an important distinction between *De Witt* and the present case. In *De Witt*, the superior court's decision to deny costs without allowing the matter to be heard by the clerk of court did not deprive the prevailing party of its opportunity to argue the matter; *De Witt* was able to present his arguments to the superior court and, thus, to preserve them for appeal. In this case, however, the superior court's decision to "remove the determination from the province of the clerk" and award all costs requested by Armco had the effect of preventing Isaacson from objecting to the inclusion of specific expenditures in the award of costs. Because Isaacson did not, and could not, raise those objections before the superior court, they cannot properly be considered on appeal. *See, e.g., University of Alaska v. Simpson Building Supply Co.*, 530 P.2d 1317, 1324 (Alaska 1975). The procedure followed by the superior court did, therefore, have the effect of completely depriving a party of the opportunity to object to specific items taxed as costs. For that reason, we hold the superior court's simultaneous entry of judgment and the award of costs was error.[8]

---

6. In support of this argument, Isaacson cites only one case, *Mason v. Belieu*, 543 F.2d 215, 222 (D.C.Cir.), *cert. denied*, 429 U.S. 852, 97 S.Ct. 144, 50 L.Ed.2d 127 (1976), in which a federal appellate court reversed an award of costs where no bill of costs was filed. That holding is in agreement with Alaskan law, *see M–B Contracting Co. v. Davis*, 399 P.2d 433, 437 (Alaska 1965), but it is inapplicable to the facts of the present case in that Armco did file a cost bill, although it did so prematurely.

7. Numerous pronouncements to the effect that the award of costs is within the discretion of the trial court lend further support to this conclusion. *See, e.g., Kaps Transport, Inc. v. Hen-*

ry, 572 P.2d 72, 79 (Alaska 1977); *Beaulieu v. Elliott*, 434 P.2d 665, 678 (Alaska 1967).

8. Isaacson's claim that the superior court lacked jurisdiction to award costs on the basis of "an invalid cost bill" is unpersuasive. First, *De Witt v. Liberty Leasing Co. of Alaska*, 499 P.2d 599, 602 (Alaska 1972) and *M–B Contracting Co.*, 399 P.2d at 437, indicate that a prematurely filed bill of costs is treated differently from the failure to file a bill of costs. Second, we have previously rejected the argument that "the requirement as to timely notice of appeal is jurisdictional" on the ground that that requirement, unlike jurisdictional requirements, can be relaxed to avoid surprise or injustice. *Vogt v. Winbauer*, 376 P.2d 1007, 1009–10

III. *Can the premium on a supersedeas bond properly be included in an award of costs?*

Armco requested and was awarded reimbursement for the premium on the supersedeas bond it posted pending appeal in the amount of $5,242. Isaacson attacks the superior court's jurisdiction to make that award.

In *Continental Insurance Co. v. United States Fidelity and Guaranty Co.,* 552 P.2d 1122, 1127 (Alaska 1976), we reversed the superior court's award, after remand from a prior appeal, of attorney's fees incurred in connection with the appeal. This court noted that Alaska R.App.P. 29 "vest[ed] the discretion to determine costs and attorney's fees pertaining to appeals in this court" and that the superior court's attempt to award costs incurred on appeal violated that rule. Concluding that, in *Continental,* this court "firmly indicated that it, and not the superior court, has the final word on costs for appeal," Isaacson asserts that the dispositive issue is "whether or not the phrase 'cost on appeal' includes a supersedeas bond premium." Its contention is that the premium must be considered a cost on appeal because the supersedeas bond would not have been obtained, nor the costs of the

premium incurred, had Armco not appealed to the Supreme Court.

In response, Armco points to several court rules which give the superior court authority to determine the amount and conditions of a supersedeas bond, Alaska R.App.P. 204(d), and to enforce a party's liability against the surety on a supersedeas bond, Alaska R.App.P. 204(f), Alaska R.Civ.P. 80(f). It also asserts that its attorney was advised by the office of the Supreme Court Clerk of Court on May 12, 1980, that its claim for recovery of the bond premium as a cost of litigation should be addressed to the superior court and not the supreme court.[9]

■ In the circumstances where this court did not, in connection with the first appeal, award Armco the premium costs pertaining to its supersedeas bond, where the Clerk of Court advised counsel for Armco that it should seek recovery of these costs in the superior court, where neither our Appellate Rules nor Civil Rules of Procedure explicitly state which court possesses the authority to award such costs, and where it is not contested that Armco is entitled to recover the premium costs from this court, we conclude that the superior court did not err in awarding this cost to Armco.[10]

(Alaska 1962). The same reasoning applies with equal force to the filing requirement under consideration and, we think, demonstrates that the filing of a cost bill outside of the prescribed time period does not deprive the superior court of jurisdiction to award costs.

**9.** Federal appellate procedure indicates that Isaacson's characterization of the issue as whether a supersedeas bond premium can properly be called a "cost on appeal" is an oversimplification. The federal rules provide specifically that some "costs on appeal" are taxed by the appellate court while others are taxed by the district court. Fed.R.App.P. 39(c), (d), and (e). The costs of "printing or otherwise producing necessary copies of briefs, appendices, or copies of records" which, pursuant to Fed.R.App.P. 39(c), are taxable in the court of appeals. This provision closely parallels Alaska R.App.P. 508(d), which reads in part: "When costs are awarded in the appellate court, they shall include . . . the filing fee, the costs of preparing the original record and transcript, and the costs of duplicating and mailing briefs." The federal rules, however, contain a

further provision which has no equivalent in the Alaska Rules: Fed.R.App.P. 39(e) specifically provides that "the premiums paid for cost of supersedeas bonds or other bonds to preserve rights pending appeal . . . shall be taxed in the district court as costs of the appeal." Although discretion to award or deny costs on appeal rests, as an initial matter, with the appellate court, a federal district court is also entitled to exercise some degree of discretion in taxing those costs. *Guse v. J. C. Penney Co.,* 570 F.2d 679, 681 (7th Cir. 1978). Federal law makes it clear, at least, that Isaacson is incorrect in asserting that characterization of the bond premium as a "cost on appeal" requires that it be taxed by the supreme court or not at all.

**10.** *See* Alaska R.Civ.P. 79(b), which provides:
A party entitled to costs may be allowed premiums paid on and expenses of posting, undertakings, bonds or security stipulations, where the same have been furnished by reason of express requirement of law or on order of the court . . . .

**IV.** *Did the superior court err in entering final judgment nunc pro tunc to August 26, 1976?*

Isaacson attacks both the retroactive entry of judgment and the procedural device relied upon by the superior court to justify it.[11]

The question when post-judgment interest should begin to accrue in favor of a successful appellant is one of first impression to this court. Isaacson urges adoption of the rule applied in California:

A judgment bears legal interest from the date of its entry in the trial court even though it is still subject to direct attack. When a judgment is modified upon appeal, whether upward or downward, the new sum draws interest from the date of entry of the original order, not from the date of the new judgment. On the other hand, when a judgment is reversed on appeal the new award subsequently entered by the trial court may bear interest only from the date of entry of such new judgment.

*Stockton Theatres, Inc. v. Palermo*, 55 Cal.2d 439, 11 Cal.Rptr. 580, 582, 360 P.2d

76, 78 (1961) (citations omitted). *See also In re Marriage of Milhan*, 27 Cal.3d 765, 166 Cal.Rptr. 533, 540, 613 P.2d 812, 819 (1980), *vacated and remanded on other grounds*, —— U.S. ——, 101 S.Ct. 3152, 69 L.Ed.2d 1000 (1981).[12]

The better rule, according to Armco, is the one adopted in Texas:

[W]hen the trial court's judgment is erroneous, the judgment of the court of civil appeals must take its place and plaintiff is entitled to interest from the date of the erroneous judgment.

*Thornal v. Cargill, Inc.*, 587 S.W.2d 384, 385 (Tex.1979). *See also American Paper Stock Co. v. Howard*, 528 S.W.2d 576, 577 (Tex. 1975). The Connecticut courts apply the same rule, on the theory that

error was found in the judgment rendered for the defendant. Had the trial court rendered a judgment for the plaintiff as it should have done, interest would have been computed from the time of that judgment .... It is only just that interest as ordered by this court on the appeal be computed from such date.

---

This court has under consideration an amendment to the Appellate Rules which would explicitly authorize the award, as costs, of premiums for supersedeas bonds.

11. We are of the view that the *nunc pro tunc* device was an inappropriate means of causing post-judgment interest to accrue from the date of entry of the original, erroneous judgment rather than from the date of judgment on remand. The general principles underlying the entry of judgment *nunc pro tunc* have been described as follows:

[T]he rule established by the general concurrence of the American and English courts is, that where the delay in rendering a judgment or a decree arises from the act of the court, that is, where the delay has been caused either for its convenience, or by the multiplicity or press of business, either the intricacy of the questions involved, or of any other cause not attributable to the laches of the parties, the judgment or the decree may be entered retrospectively, as of a time when it should or might have been entered up.

6A J. Moore, Moore's Federal Practice ¶ 58.08 (1979), *quoting Mitchell v. Overman*, 103 U.S. 62, 64–65, 26 L.Ed. 369, 370 (1880). "But," according to Moore, "the entry nunc pro tunc ... cannot be used by the lower court as a device to amend a judgment which properly

reflected the decision of the court, but which was later found to be undesirable or erroneous." *Id.* ¶ 58, at 303–04. Cases from other American jurisdictions are in virtually unanimous agreement with that statement. *See, e.g., DuPonte v. DuPonte*, 53 Haw. 123, 488 P.2d 537, 540 (1971); *Norcross v. Pickrell Drilling Co.*, 202 Kan. 524, 449 P.2d 569, 571 (1969); *Humphrey Oil Corp. v. Lindsey*, 370 P.2d 296, 297 (Okl.1961). The fact that the superior court's entry of judgment *nunc pro tunc* was procedurally incorrect does not, however, affect the necessity of review by this court of the merits of the award of post-judgment interest.

12. The same rule is in force in Kansas, *Lippert v. Angle*, 215 Kan. 626, 527 P.2d 1016, 1018–19 (1974), Montana, *Resner v. Northern Pacific Railway*, 161 Mont. 177, 505 P.2d 86, 92 (1973), New Mexico, *Bank of New Mexico v. Earl Rice Constr. Co.*, 79 N.M. 115, 440 P.2d 790, 791 (1968), Oregon, *Pearson v. Schmitt*, 260 Or. 607, 492 P.2d 269, 270 (1971), Washington, *Fulle v. Boulevard Excavating, Inc.*, 25 Wash. App. 520, 610 P.2d 387, 389 (1980), and Florida, *Novack v. Novack*, 210 So.2d 215, 216–17 (Fla. 1968). The *Stockton* approach is the majority rule in American jurisdictions. *See* Annot., 4 A.L.R.3d 1221 (1965).

*Pascack Valley Bank and Trust Co. v. Ritar Ford Sales, Inc.*, 295 A.2d 667, 668 (Conn. App.1972).

 We think the Texas-Connecticut rule is more in accord with the view this court has taken of prejudgment and post-judgment interest. In *Farnsworth v. Steiner*, 638 P.2d 181 (Alaska, 1981) we stated that post-judgment interest is "a form of compensating for the period that the [prevailing party] remains 'less than whole,'" *id.* at 185, and further noted that "we do not consider responsibility for a delay of payment as a factor in making an interest award," *id.* Adherence to this rationale leads us to the conclusion that the Texas-Connecticut rule should be adopted. Since Armco is entitled to reimbursement for costs and attorney's fees incurred in connection with the original trial, we think it clear that Armco has "suffer[ed] the loss of use of money rightfully [belonging to it]," *id.* at 184, from the time of the original judgment.[13] We therefore hold that the superior court correctly determined that Armco is entitled to interest on its trial costs and attorney's fees from August 26, 1976, the date of the original judgment.[14]

The case is REMANDED to the superior court for a hearing on the taxation of costs and objections thereto in conformity with Civil Rule 79 and with this opinion.[15]

---

**13.** *See also* Fed.R.App.P. 37.

**14.** The only exception to this application of interest pertains to the costs relating to supersedeas bond premiums. Upon remand the superior court should determine interest from the dates premium payments were made by Armco.

**15.** The superior court is authorized, without the necessity of initial proceedings before the Clerk of Court, to determine allowable costs.

---

Isaacson has in this appeal specifically questioned four items of costs which the superior court allowed. These costs are related to Armco's telephone bills, car rental expenses, photocopying of "production materials", and per diem meal costs. We think it appropriate that upon remand the superior court consider Isaacson's objections to these claimed cost items.